# Exhibit B

David Sanford (DC SBN 457933)
dsanford@sanfordheisler.com
SANFORD HEISLER SHARP, LLP
700 Pennsylvania Ave. SE, Suite 300
Washington, DC 20003
Telephone: (202) 499-5200
Facsimile: (202) 499-5199

Danielle Fuschetti (CA SBN 294064)
dfuschetti@sanfordheisler.com
SANFORD HEISLER SHARP, LLP
111 Sutter Street, Suite 975
San Francisco, CA 94104
Telephone: (415) 795-2020
Facsimile: (415) 795-2021

Felicia Medina (CA SBN 255804)
fmedina@medinaorthwein.com
MEDINA ORTHWEIN LLP
1322 Webster St. Ste. 200
Oakland, CA 94612
telephone: (510) 823-2040
fax: (510) 217-3580

*Attorneys for the Plaintiff and the Class*

Apalla U. Chopra (S.B. #163207)
achopra@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Susannah K. Howard (S.B. #291326)
showard@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California, 94111-3823
Telephone: (415) 984-8976
Facsimile: (415) 984-8701

*Attorneys for Defendants Western Digital Corporation and Western Digital Technologies, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YUNGHUI CHEN, on behalf of herself and all others similarly situated,<br><br>**PLAINTIFF**,<br><br>v.<br><br>WESTERN DIGITAL CORPORATION AND WESTERN DIGITAL TECHNOLOGIES, INC.,<br><br>**DEFENDANTS**.<br>_____ | Case No.:<br><br>**AMENDED COLLECTIVE AND CLASS ACTION SETTLEMENT AGREEMENT** |

Case No. _____

-1-

Subject to approval by the United States District Court Central District of California, this Amended Collective and Class Action Settlement Agreement sets forth the full and final terms by which Defendants Western Digital Corporation and Western Digital Technologies, Inc., (collectively, "Western Digital") and the Named Plaintiff and Class Representative, Yunghui Chen, on behalf of herself and the Rule 23 Class and the Collective Action Plaintiffs as defined below, have settled and resolved all claims that have been raised in the Litigation.

## RECITALS

WHEREAS, a collective, class and representative action Complaint ~~shall be~~was filed ~~between~~on May ~~13, 2019 and May 15~~14, 2019, alleging (i) gender discrimination in compensation, placement, and promotions; and (ii) gender-based unequal pay as set forth in the Complaint;

WHEREAS, Western Digital denies and continues to deny all of the allegations made and have denied and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted.  Nonetheless, without admitting or conceding any liability or damages, Chen and Western Digital ("the Parties") have agreed to settle the lawsuit on the terms and conditions set forth herein to avoid the burden and expense of continuing litigation;

WHEREAS, the Parties have engaged in a substantial pre-litigation exchange of documents, data and analyses, have had joint meetings with experts, and have had a series of meetings to explore their respective factual positions and arguments;

WHEREAS, the Parties have engaged in settlement negotiations in April 2017 before David Rotman, Esq., an experienced mediator who is skilled in the prosecution of and resolution of complex class actions, including gender discrimination lawsuits;

WHEREAS, the Parties and their counsel recognize that, in the absence of an approved settlement; they would face a long litigation, including extensive, costly and time consuming discovery, a motion for class certification under Federal Rule of Civil Procedure 23, motions for certification and decertification of the collective action, motions for summary judgment, and trial and appellate proceedings that would consume time and resources and present each of them with ongoing litigation risks and uncertainties;

WHEREAS, the Parties wish to avoid these risks and uncertainties, as well as the consumption of time and resources, through settlement pursuant to the terms and conditions set forth herein;

WHEREAS, based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the litigation, if not settled now, might result in no recovery or a recovery that is less favorable to the Plaintiff and Class, counsel for Plaintiff is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of Plaintiff, class members, and the Collective Action Plaintiffs;

WHEREAS, the Class Representative believes that the settlement set forth herein serves the best interests of class members based on all the facts and circumstances, including the risk of

-2-

significant delay, issues with respect to the merits of the claims, and the uncertainty of class certification, as it provides prompt relief for class members;

WHEREAS, it is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims arising from or related to the litigation which exist between them and between the Named Plaintiff, the class members, the Collective Action Plaintiffs, and the released parties;

WHEREAS, on May 14, 2019, the parties executed a Collective and Class Action Settlement Agreement, and Plaintiff moved for preliminary approval thereof;

WHEREAS, a hearing on the motion for preliminary approval was held on December 6, 2019;

WHEREAS, on April 3, 2020, the Court issued an Order (1) Conditionally Granting Plaintiff's Motion For Preliminary Approval Of Class Action Settlement (Dkt. 6); and (2) Setting A Final Fairness Hearing (Dkt. 61), which order necessitates certain changes to the Collective and Class Action Settlement Agreement;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the litigation on the following terms and conditions:

## 1. DEFINITIONS

The following terms shall have the meanings defined in this Section, wherever used in this Agreement, and in all of its exhibits:

1.1 **Agreement**. "Agreement" means this settlement agreement and all exhibits attached to it.

1.2 **CAFA Notice**. "CAFA Notice" means the notice required pursuant to 28 U.S.C. § 1715(b)

1.3 **California Sub-Class**. "California Sub-Class" means women directly employed by Western Digital Technologies, Inc., Western Digital (Fremont), LLC, and/or Western Digital Media, LLC in California in a Covered Position at any time from November 1, 2012 through the date of the Order Granting Preliminary Approval, (excluding those who became employed by Western Digital Corporation or an affiliated entity as a result of or in connection with an acquisition on or after May 1, 2016), who do not opt out of the monetary relief provisions of the Settlement.

1.4 **Class Administrator**. "Class Administrator" means an administrator who has been jointly designated by counsel for the Parties, and approved by the Court, to administer the settlement pursuant to the terms of this Agreement. Rust Consulting, Inc. has been selected as the Class Administrator.

1.5 **Class Counsel**. "Class Counsel" means David Sanford and Danielle Fuschetti of the law firm of Sanford Heisler Sharp, LLP and Felicia M. Medina of Medina Orthwein LLP.

AMENDED COLLECTIVE AND CLASS ACTION SETTLEMENT AGREEMENT

1-3

Case No. _____

1.6    **Collective Action Plaintiffs**. "Collective Action Plaintiffs" means women directly employed by Western Digital Technologies, Inc., Western Digital (Fremont), LLC, and/or Western Digital Media, LLC in a Covered Position in the United States at any time from November 1, 2013 through the date of the Order Granting Preliminary Approval (excluding those who became employed by Western Digital Corporation or an affiliated entity as a result of or in connection with an acquisition on or after May 1, 2016) ~~who do not opt out of the monetary relief provisions of the Settlement.~~ and who opt into the EPA action and settlement by negotiating an EPA Settlement Check and accepting the release of claims under the EPA. Individuals who are sent Notice of the settlement but do not timely negotiate a check representing EPA Settlement Consideration will be deemed no longer to be Collective Action Plaintiffs.

1.7    **Court**. "Court" means the Court having jurisdiction over this Litigation, at any stage (presently the United States District Court for the Central District of California, Southern Division).

1.8    **Covered Position**. A "Covered Position" means an indirect labor position at the Senior Manager level or below.

1.9    **Defendant or Western Digital**. "Defendants," the "Company," or "Western Digital" means Western Digital Corporation and Western Digital Technologies, Inc.

1.10   **Defendants' Counsel**. "Defendants' Counsel" means the law firm of O'Melveny & Myers LLP.

1.11   **Effective Date**. "Effective Date" means the date on which the Court has entered the Order Granting Final Approval, provided that no timely objection has been made or that all timely objections have been resolved or withdrawn, thus triggering the appeal waiver in Section 9.4.7. If an objection to the Settlement is timely filed and has not been resolved or withdrawn by the date on which the Court has entered the Order Granting Final Approval, the Effective Date shall be the date on which the deadline for taking an appeal has passed, or, if there is an appeal of the Court's Order Granting Final Approval, the day after all appeals are fully and finally resolved in favor of final approval of the Agreement.

1.12   **EPA**. "EPA" means the Equal Pay Act of 1963, as amended, 29 U.S.C. § 206(d).

1.13   **Fairness Hearing**. "Fairness Hearing" means the hearing during which the Court shall finally approve the Agreement and make such other rulings as are contemplated by this Agreement or as modified by any subsequent mutual agreement of the Parties in writing and approved by the Court.

1.14   **Litigation**. "Litigation" means the Class and Collective Action Complaint that will be filed in the United States District Court for the Central District of California, Southern Division, on behalf of Named Plaintiff ~~between~~on May ~~13, 2019 and May 15~~14, 2019, and the allegations and claims made therein.

1.15   **LWDA Payment**. "LWDA Payment" means the payment of the State of California's share of civil penalties.

AMENDED COLLECTIVE AND CLASS ACTION SETTLEMENT AGREEMENT
1-4

Case No. _____

1.16  **Named Plaintiff and Class Representative**.  "Named Plaintiff" and "Class Representative" means Yunghui Chen.

1.17  **Nationwide Sub-Class**.  "Nationwide Sub-Class" means women directly employed by Western Digital Technologies, Inc., Western Digital (Fremont), LLC, and/or Western Digital Media, LLC  in a Covered Position as regular employees in the United States at any time from November 1, 2013 through the date of the Order Granting Preliminary Approval, (excluding those who became employed by Western Digital Corporation or an affiliated entity as a result of or in connection with an acquisition on or after May 1, 2016), who do not opt out of the monetary relief provisions of the Settlement, and excluding any member of the California Sub-class.

1.18  **Notice**.  "Notice" means the Notice of Collective and Class Action Settlement, substantially in the form attached hereto as Exhibit A, and as approved by the Court.

1.19  **Order Granting Final Approval**. "Order Granting Final Approval" means the final order entered by the Court after the Fairness Hearing.

1.20  **Order Granting Preliminary Approval**. "Order Granting Preliminary Approval" means the Order entered by the Court ~~preliminarily approving, *inter alia*,~~at Docket 61, ORDER (1) CONDITIONALLY GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (Doc. 6); AND (2) SETTING A FINAL FAIRNESS HEARING, provided that the ~~terms and conditions of this Agreement,~~Court approves the ~~manner and timing of providing Notice, and~~parties' supplemental submissions regarding the ~~time period for,~~settlement and proceeds with the ~~manner of, opt outs and objections.~~final fairness hearing

1.21  **Parties**.  "Parties" means the Plaintiff and the Western Digital Defendants.

1.22  **Released Parties**. "Released Parties" means (i) Western Digital Corporation and Western Digital Technologies, Inc.; (ii) their respective current and former subsidiaries and affiliated entities including without limitation, Western Digital (Fremont), LLC, and Western Digital Media, LLC; and (iii) the respective predecessors and successors of each entity listed in (i) and (ii); and (iv) all of the incumbent and former officers, directors, owners, members, managers, shareholders, investors, agents, insurers, attorneys, employees, fiduciaries, successors, assigns, and representatives, in their individual and/or representative capacities of each entity referenced in (i), (ii) and (iii).

1.23  **Class**.  "Class" means, collectively, the California Sub-Class and the Nationwide Sub-Class.

1.24  **Class Member**.  "Class Member" means any member of the Class who did not opt-out pursuant to the opt-out procedure set forth in Section 9.3.1.

1.25  **Service Award**.  "Service Award" means the additional amounts paid to the Named Plaintiff listed in Section 6, subject to Court approval, for her service in this Litigation.

1.26  **Settlement Fund**. "Settlement Fund" means the common settlement fund account in the sum of Seven Million Seven Hundred and Fifty Thousand Dollars ($7,750,000) that is

established by the Class Administrator and includes all settlement payments, including all payments to the Class and the Collective Action Plaintiffs, the Service Award, the LWDA Payment, the costs of administration, and the fees and costs of Class Counsel, all as described more fully herein.  Except as set forth in section 4.3.6 related to employer's share of statutory and other payroll taxes, Western Digital shall not be responsible for any additional payment not expressly set forth in this Agreement.

1.27   **Class Monetary Relief.**  "Class Monetary Relief" shall mean monetary relief paid to Class Members for claims other than those arising under the EPA.

1.28   **EPA Monetary Relief.**  "EPA Monetary Relief" shall mean monetary relief paid to Collective Action Plaintiffs in recognition of their EPA claims.

## 2.    GENERAL TERMS

2.1   It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims arising from or related to the litigation which exist between them, and between the Released Parties and the Class and the Collective Action Plaintiffs.

2.2   It is the intention of the Parties that this Agreement shall constitute a full and complete settlement and release of all Released Claims (as defined in Section 11.1) against all Released Parties and a dismissal of all pending actions covered by the Released Claims.

2.3   Western Digital denies all claims as to liability, wrongdoing, damages, penalties, interest, fees, injunctive relief and all other forms of relief, as well as the class and collective allegations asserted in the litigation.  Western Digital has agreed to resolve the Litigation via this Agreement, but to the extent this Agreement is deemed void or the Effective Date does not occur, Western Digital does not waive, but rather expressly reserves, all rights to challenge any and all claims and allegations asserted by the Class Representative in the Litigation upon all procedural and substantive grounds, including without limitation the ability to challenge class or collective action treatment on any grounds and to assert any and all other potential defenses or privileges.  The Class Representative and Class Counsel agree that Western Digital retains and reserves these rights, and they agree not to take a position to the contrary.  Specifically, and the Class Representative and Class Counsel agree that, if the Litigation were to proceed, they shall not argue or present any argument, and hereby waive any argument that, based on this settlement or this Agreement or any exhibit and attachment hereto, or any act performed or document executed pursuant to or in furtherance of this settlement or this Agreement, Western Digital should be barred from contesting class action certification pursuant to Federal Rule of Civil Procedure 23 on any grounds, contesting conditional certification of a collective action, or asserting any and all other potential defenses and privileges.  This Agreement shall not be deemed an admission by, or a basis for estoppel against, Western Digital that class action treatment pursuant to Federal Rule of Civil Procedure 23 or conditional certification pursuant to 29 U.S.C. § 216(b) is proper or cannot be contested on any grounds.  Additionally, neither the Agreement nor the settlement, nor any act performed or document executed pursuant to, or in furtherance of, the Agreement or the settlement: (a) is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Claim, or of any wrongdoing or liability of the Released Parties, or any of them; or (b) is or may be deemed

to be or may be used as an admission or evidence of any fault or omission of the Released Parties, or any of them, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

2.4    Neither this Agreement nor anything in it, nor any part of the negotiations that occurred in connection with the creation of this Settlement, shall constitute evidence with respect to any issue or dispute in any lawsuit, legal proceeding, or administrative proceeding, except for legal proceedings concerning the enforcement or interpretation of this Agreement.

2.5    **Mutual Full Cooperation**.  The Parties agree to cooperate fully with each other, and shall aim to effectuate and implement all terms and conditions of this Agreement and to obtain the Court's approval of this Agreement and all of its terms.  Each of the Parties, upon the request of any other, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

2.6    **CAFA Notice**.  Western Digital, or at its request, the Class Administrator, shall provide provided notice of the proposed Settlement to state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715, no later than fifteen (15) days on June 1, 2019, after Class Counsel files filed a motion for preliminary approval of this Agreement. No state or federal official raised any concerns or questions regarding this Agreement in response to the notice.

2.7    **LWDA Notices**:  Class Counsel, or at their request, the Class Administrator, will provide provided to the California Labor and Workforce Development Agency (LWDA) the following notifications:

2.7.1    Within 10 days following the filing of the Complaint, Class Counsel will provide provided the LWDA with a file-stamped copy of the complaint that includes the case number assigned by the court.

2.7.2    Class Counsel provided a copy of the May 14, 2019 Settlement to the LWDA. Class Counsel will provide a copy of this Amended Settlement to the LWDA at the same time that it is submitted to the court Court.

2.7.3    Class Counsel will provide a copy of the Court's judgment and any other order in this action that either provides for or denies an award of civil penalties under this code, within 10 days after entry of the judgment or order.

## 3.    BUSINESS PRACTICES PROGRAMMATIC RELIEF

Western Digital will implement the business practices described in this Section for its indirect labor employees in the 50 United States and the District of Columbia.

### 3.1    <u>Duration of Changes in Business Practices</u>

The actions in this Section will be implemented immediately upon the Effective Date and will remain binding on the Parties and their agents and successors for a two (2) year period following the Effective Date, unless a different timeframe is provided for a particular component of the changes in business practices described herein.

-7-

3.2    **Internal Compliance Monitoring**

    3.2.1    No later than fourteen (14) days after the Effective Date of this Settlement, the Company will appoint an existing employee or hire a new employee (referred to herein as "Compliance Monitor"), who will be at least at the level of Director and will be charged with overall responsibility for monitoring compliance with the terms of this Agreement.

    3.2.2    In the event that the Compliance Monitor ceases to function in that role, the Company will appoint or hire a replacement Compliance Monitor as soon as practicable.

    3.2.3    Western Digital will provide the Compliance Monitor with such support staff, funds and other resources as may be reasonably necessary to discharge the obligations under this Agreement.

    3.2.4    The Compliance Monitor and the head of Human Resources will meet at least twice annually to review the Company's compliance with the terms of the Agreement.

    3.2.5    No later than one hundred and eighty (180) days after the anniversary of the Effective Date, the Compliance Monitor will report to Plaintiff's Counsel on compliance with the programmatic relief provisions of this Agreement. The Compliance Monitor will also report to Plaintiff's Counsel the results and other information discussed below in the timetables specified. Unless otherwise provided herein, the Compliance Monitor shall not be required to provide copies of training materials or other internal Western Digital documentation to Plaintiff's Counsel as part of his or her report.

3.3    **Dispute Resolution Process for Business Practices Changes**

    3.3.1    No later than thirty (30) days after the Effective Date, the Parties shall jointly request that the Court appoint Judge William Rylaarsdam, as the Compliance Special Master. In the event that the appointee becomes unavailable, the Parties shall jointly request that the Court appoint a replacement.

    3.3.2    No later than thirty (30) days after service of each report by the Compliance Monitor (*see* Section 3.2.5), if Class Counsel identifies grounds in the report that they in good faith believe raise concerns as to whether Western Digital has satisfied its obligations under this Agreement, Defendants' Counsel and Class Counsel shall confer regarding Class Counsel's concerns.

    3.3.3    If the Parties are unable to resolve Class Counsel's concerns within 45 days of service of the report, the dispute shall be submitted to non-binding private mediation before a mediator of the Parties choosing. However, under no circumstances may Class Counsel submit a dispute to the mediator without first conferring with Defendants' Counsel in good faith. The mediation shall be for a one-day session unless the Parties agree mutually to a different length. The Parties will split the costs of all mediator fees and will otherwise bear their own costs and fees associated with

the mediation. In their application for fees and costs, Class Counsel will apply for an amount to be earmarked to cover the Class's share of the mediators' fees and any costs of the mediation, excluding attorneys' fees. Any portion of this amount not used by the termination of the programmatic relief period will be redistributed to the class, or, if redistribution is not feasible, will be paid to the cy pres recipients specified in section 7.5 of this Agreement.

3.3.4    If mediation does not resolve a given dispute, Class Counsel will submit to the Compliance Special Master a statement of position no later than twenty-one (21) days after the date of the mediation. Western Digital may, within fourteen (14) days of receiving Class Counsel's statement of position, submit a response/opposition to the Compliance Special Master.

3.3.5    Upon receiving the Parties' submissions, the Compliance Special Master may request additional written submissions, or require the Parties to appear for a hearing, if appropriate.  In any event, within thirty (30) days of receiving the Parties' submission(s), the Compliance Special Master shall issue a written decision regarding whether Class Counsel has raised any valid objection to Western Digital's compliance with its obligations under this Agreement.  The Compliance Special Master shall dismiss any of Class Counsel's objections for which Class Counsel did not follow the procedural requirements of Section 3.3.2.

3.3.6    If the Compliance Special Master finds that any of Class Counsel's objections raise legitimate, good-faith concerns regarding Western Digital's compliance with its obligations under this Agreement, Western Digital shall have sixty (60) days following receipt of the Special Master's decision to address Class Counsel's concerns.  If the Parties are unable to reach agreement regarding Class Counsel's concerns within this time period, either Party may seek assistance from the Court.

3.3.7    Should either Party disagree with the Compliance Special Master's decision, such Party may, within sixty (60) days following receipt of the decision, file an objection before the Court after first conferring in good faith with the other Party in an effort to resolve the dispute.

3.3.8    Western Digital will pay the fees and costs of the Compliance Special Master, but the parties shall each bear the fees of their own attorneys' fees and travel expenses.

3.4    **Retention of Records**

Western Digital will maintain records related to its compliance with the terms of this Agreement consistent with its retention policies and legal obligations.

3.5    **EEO Information and Training**

3.5.1    Western Digital will maintain its policy prohibiting employment discrimination, harassment and retaliation on its employee intranet.

3.5.2    Western Digital will add a statement on its job portals that all supervisory-level employees must: "Actively support diversity and inclusion in the workforce."

AMENDED COLLECTIVE AND CLASS ACTION SETTLEMENT AGREEMENT

1-9

3.5.3   Western Digital will include an affirmation of its commitment to equal opportunity employment on all of its job portals for both internal and external candidates.

3.5.4   Western Digital will host mandatory training that is approximately two (2) hours in length, presented by a qualified trainer, for all managers of people, including executives, and any person involved in the hiring process, on the following subjects:

(1)   Western Digital's commitment to diversity and inclusion;

(2)   A general overview of equal employment opportunity laws, including laws prohibiting discrimination (including pay and promotion discrimination) and retaliation;

(3)   Implicit bias;

(4)   Preventing bias in the workplace, including in the hiring process, promotions, and development and mentoring;

(5)   Mentoring all employees regardless of gender and tips for developing diverse talent throughout the year;

(6)   Western Digital's expectations that all employees will treat others with respect and support the Company's diversity and inclusion initiatives, and ways in which managers can become involved in diversity and inclusion initiatives;

(7)   Where to find out more about Western Digital's policies on maternity, paternity and other leaves; the procedure for requesting flexible work arrangements, and accommodations to support breastfeeding; and

(8)   Western Digital's complaint procedures for reporting violations of its policies, including the toll-free hotline on which anonymous complaints may be lodged.

The training will take place between the date of Preliminary Approval and 6 months from the Effective Date of this agreement; however, any employee who has completed an equivalent training covering the above topics between October 2018 and the date of Preliminary Approval shall not be required to repeat the training. Western Digital will make reasonable efforts to ensure attendance by all persons required to attend this training within this time frame; however, the Parties acknowledge that some such persons may have personal and/or professional commitments that conflict with the scheduled training and preclude them from attending within the specified time frame. Any persons required to attend the training who miss this training will be required to view a recording of this training no later than 1 year from the Effective Date.

Western Digital will also publish on its intranet site its diversity and inclusion initiatives, and ways in which managers and all employees can become involved.

3.5.5   Western Digital will require all non-managerial employees not required to take the training described in Section 3.5.4, employed as of the Effective Date, as well as

-10-

AMENDED COLLECTIVE AND CLASS ACTION SETTLEMENT AGREEMENT

1-10

new hires in and all transfers to the United States to view a video training between the date of Preliminary Approval and sixty (60) days of the Effective Date or sixty (60) days of commencing work in the United States (whichever is later) that will cover at least:

(1) Western Digital's expectations that all employees will treat others with respect and support the Company's diversity and inclusion initiatives;

(2) Western Digital's policies prohibiting discrimination, harassment, and retaliation, including examples of the kinds of behaviors and statements that violate the policies;

(3) Western Digital's commitment to diversity and inclusion, and compliance with laws preventing discrimination (including pay and promotion discrimination);

(4) Where to find out more about Western Digital's policies on maternity, paternity and other leaves; the procedure for requesting flexible work arrangements, and accommodations to support breastfeeding; and

(5) Western Digital's complaint procedures for reporting violations of its policies, including the toll-free hotline on which anonymous complaints may be lodged.

Western Digital will make all reasonable efforts to ensure attendance by all non-managerial employees within the time frame specified above; however, the Parties acknowledge that some employees may have personal and/or professional commitments that preclude them from completing the training within this time frame. Western Digital will ensure that any such employee completes the training as soon as it is feasible to do so.

3.5.6 **Western Digital will require all employees covered by this Section**, employed as of the Effective Date, as well as new hires in and all transfers to the United States to attend a training between the date of Preliminary Approval and sixty (60) days of the Effective Date or sixty (60) days of commencing work in the United States (whichever is later) **that will cover at least** Western Digital's policies prohibiting discrimination, harassment, and retaliation, including examples of the kinds of behaviors and statements that violate the policies.  Western Digital will make all reasonable efforts to ensure attendance within the time frame specified above; however, the Parties acknowledge that some employees may have personal and/or professional commitments that preclude them from completing the training within this time frame. Western Digital will ensure that any such employee completes the training as soon as it is feasible to do so.

3.6 **Employee Complaint Policy, Procedure, Process and Response**

3.6.1 Western Digital will maintain an employee Ethics Hotline, which allows employees to make workplace-related complaints including but not limited to possible violations of the Company's policy prohibiting discrimination (including disparate

-11-

AMENDED COLLECTIVE AND CLASS ACTION SETTLEMENT AGREEMENT
1-11

treatment discrimination, pay discrimination, and promotion discrimination), harassment, retaliation, denial of employee rights to leaves provided by law or Western Digital policy. Employees will be able to submit complaints to the Ethics Hotline either in writing via the web or to a 24-hour toll-free hotline. Information on the complaint process will make clear that complaints to the toll-free hotline can be lodged anonymously and that the information collected during the investigation is kept confidential to the extent possible.

3.6.2   Investigations of complaints will be conducted only by, or under the supervision of, either a Human Resources professional or attorney who has been trained on Western Digital's investigation procedures.

3.6.3   Western Digital will maintain a centralized database of complaints submitted to the Ethics Hotline by which Western Digital can monitor and review the content, investigation and resolution of complaints. The database will include information such as:

(1)   The date of the complaint;

(2)   The type of complaint;

(3)   The complainant (where available);

(4)   The subject matter of the complaint;

(5)   Any individuals alleged to have been responsible for the complained of acts;

(6)   The date of the initial contact with the complainant; and

(7)   The outcome of the investigation (e.g., unsubstantiated, insufficient information, partially substantiated, or substantiated), and the nature of the corrective action, if any.

3.6.4   In addition to the Ethics Hotline, employees may communicate any workplace-related complaints to Human Resources or Employee Relations.

3.6.5   Western Digital will establish written guidelines or procedures for investigating the complaints listed in Sections 3.6.1 and 3.6.4 submitted to the Ethics Hotline, Employee Relations and/or Human Resources that include information such as:

(1)   How to identify and classify complaints;

(2)   Information to be provided to complainants at the beginning of an investigation, including an overview of the investigation process, projecting for the complainant a good-faith target date for commencing and completing the investigation, the role that the complainant will play in the process, the fact that the complainant may at all times communicate with the assigned investigator either orally or in writing, and the level of

information that may be provided to the complainant at the close of an investigation;

    (3)    Creation of a case investigations plan;

    (4)    Handling the array of possible outcomes where claims are substantiated;

    (5)    A requirement that the investigator, when possible, schedule a closure meeting with the complainant to discuss the results of the investigation, taking into consideration applicable confidentiality restrictions, the complainant's rights upon conclusion of the investigation, and the process to promptly report retaliation if the complainant believes that it occurs (including contact information to be able to escalate a concern); and

    (6)    As appropriate, a requirement that the investigator notify employees accused of wrongdoing (if still employed) and his or her manager of the results of the investigation when it is concluded; any follow-up training or other actions required; any disciplinary action; and the fact that they cannot retaliate in any way against the complainant(s) and any witnesses for having reported a concern or participated in an investigation.

3.6.6    Western Digital will provide information to employees about channels to report a concern and information about the investigations process. This information will be available to employees on Western Digital's intranet portal and upon request can be provided to any person who contacts Human Resources, Employee Relations or the Ethics Hotline to raise a complaint, regardless of whether a formal complaint is filed.

3.6.7    Western Digital will take appropriate disciplinary action, which may include termination of employment, against any employee who violates the Company's policies listed in Section 3.5.1. If the offender is not terminated, he or she may be required to participate in appropriate training or will receive other appropriate discipline, which may include ineligibility for a short-term incentive compensation or long-term incentive compensation award in the first Annual Compensation Review Cycle ("ACR") that concludes after the violation is found.

3.6.8    The Company will maintain confidentiality to the extent appropriate. However, the Company cannot promise complete confidentiality. The Company's duty to investigate and take corrective action may require the disclosure of information to individuals with a need to know. A thorough investigation of such complaints may require disclosure to the accused party and possibly to witnesses in order to gather pertinent facts. In the same way, anyone involved in an investigation of harassment, discrimination or retaliation has an obligation to keep information about the investigation confidential as required to preserve the integrity of the investigation. Failure to keep such information about an investigation confidential may result in disciplinary action.

3.7    **Equity Analysis of Promotions**

3.7.1   At the beginning of every promotions cycle, Western Digital will issue and post on its portal written notification of the promotion guidelines, timeline and deliverables.

3.7.2   Western Digital will aim to promote women at the same rate it promotes men, consistent with their relative proportions in the appropriate job level from which promotions are made.  For example, if 8% of male incumbents in a level are promoted out of the level, Western Digital's goal will be to promote at least approximately 8% of the female incumbents if men and women have similar experience, skill sets, and performance history.  The promotion rate goals are not quotas; they are designed to provide guidance as to whether Western Digital is making promotion decisions over time in such a way as to afford equal employment opportunity.  Western Digital will not be required to select less qualified employees over more qualified employees for promotion.

3.7.3   Western Digital shall conduct an analysis within one year of the Effective date and on an annual basis during the term of this Agreement that will determine the promotion rates of women as compared to men with substantially similar experience within the same job level, track and function.  To extent the annual promotion rate of women within any particular job level, track and function is five percentage points (5%) or more below the rate of promotion of men with substantially similar experience within the same job level, track and function, the Compensation Department will identify female employees within that job level, track and function who have not been promoted in the three preceding years and provide these names to the Human Resources Business Partners supporting such female employees.  The Human Resources Business Partners shall, in turn, work with the responsible manager to ensure that the readiness of each such female employee for promotion is explored during the following ACR period.

3.7.4   Within sixty (60) days of completing the analysis set forth in Section 3.7.3, the Compliance Monitor shall report to Plaintiff's Counsel whether the annual promotion rate of women falls outside of the parameters set forth in Section 3.7.3 for any particular job grouping (i.e. by job level, track and function). If the analysis reveals that the promotion rate of women falls below the parameters set forth in Section 3.7.3, the Compliance Monitor shall provide written confirmation to Plaintiff's Counsel that Western Digital has complied with the requirements of Section 3.7.3 and that identifies the number of women affected as well as the affected job grouping(s).

3.7.5   It is agreed and understood that the precise timing of the analysis set forth in Section 3.7.3 shall depend upon the timing of Western Digital's promotion cycle and thus may vary from year to year.  Notwithstanding this, Western Digital shall not perform fewer than two of the annual analyses described in 3.7.3 following the Effective Date.  The Parties understand and agree that the second analyses may occur more than two years after the Effective Date, in which case, the period of programmatic relief for components associated with promotions, including this section 3.7, will be extended until WD has provided the analyses in section 3.7.3 and provided the report called for in section 3.7.4.

3.8    **Equity Analysis of Compensation**

3.8.1    Western Digital will conduct an equity analyses within one year of the Effective Date and on annual basis during the term of this Agreement that will compare the salaries, total cash compensation, and total direct compensation, of female and male employees in positions at the Senior Manager level and below. The work associated with this analysis will be paid at the Company's expense.

3.8.2    If the analysis described in Section 3.8.1 reveals that any woman at the Senior Manager level or below in one of the affected categories is receiving compensation (in any pay category) below the expected range for that employee's role and experience, then Western Digital shall adjust such woman's compensation so that it falls within the expected range for her role and experience, unless it establishes that all or part of the pay disparity is the result of a factor (or combination of factors) other than gender and that such factor (or factors) are job-related for the position in question. In addition, Western Digital will make all reasonable efforts to address other pay disparities between men and women identified by the analysis described in Section 3.8.1.

3.8.3    Within sixty (60) days of completing the analysis set forth in Section 3.8.1, the Compliance Monitor shall report to Plaintiff's Counsel whether the results of the analysis revealed any pay disparities as set forth in Section 3.8.1 and 3.8.2. If the analysis reveals any such pay disparities, the Compliance Monitor shall further report to Plaintiff's Counsel:

(1)    The number of women for whom the analysis showed compensation (in any pay category) below the expected range for that employee's role and experience.

(2)    Out of those women included in Subsection (1), the number of women for whom Western Digital made pay adjustments.

3.8.4    It is agreed and understood that the precise timing of the analysis set forth in Section 3.8.1 shall depend upon the timing of Western Digital's compensation cycle and thus may vary from year to year.

3.8.5    Western Digital will develop a process and standards for setting compensation within the job level pay range established by Western Digital for new hires and employees changing jobs and job levels while employed at Western Digital, after the Company's consideration of market surveys and market supply and demand. Western Digital will publish and regularly update on the company's intranet site its Career Architecture and job level structure with associated base pay ranges, and, for each job level, the short-term incentive compensation ("STI") target percentile ranges from the most recent year for which this information is available, and whether the job level is eligible for long-term incentive compensation ("LTI").

3.8.6   Western Digital will not prohibit employees from discussing compensation. This paragraph does not require Western Digital to disclose the compensation of one employee to another.

3.9   **Flexible Work Arrangements, Maternity and Parental Leave and Other Policies**

3.9.1   Within ninety (90) days of the Effective Date, Western Digital shall adopt a flexible work policy for all US-based employees.

3.9.2   Within ninety (90) days of the Effective Date, Western Digital will designate one or more individuals in Human Resources who are available to work with employees and their managers on requests for flexible work schedules, reduced hours for reduced pay and maternity/parental leaves (referred to herein as "Flexible Work Liaisons"). These individuals will work with the employee's manager to determine whether to approve a flexible work schedule or reduced hours for reduced pay as well as the duration of the schedule (with the caveat that employees on flexible work schedules or reduced hours must be available as needed to fulfill business requirements that arise), and will document and communicate to the employee the decision reached and reasons for denying a request, if the request is not granted.

3.9.3   Western Digital will publish on its intranet and in its employee handbook its policies on maternity, paternity and parental leave; accommodation for breastfeeding and the location of lactation rooms; and flexible work policy; including the process for requesting a flexible work arrangement.

3.9.4   Employees on reduced schedules should be assigned their ratable share of the team's work, but not more. If business needs require an employee on a reduced schedule to work more hours than contemplated by their reduced schedule on a consistent basis, either the employee or their manager may request that the employee's base salary be adjusted upward accordingly in consultation with the Flexible Work Liaison.

3.9.5   Employees on reduced schedules remain eligible for consideration for promotion (although there is no guarantee that an employee can remain on a reduced schedule if promoted) and should be allocated rewards that are consistent with their actual comparative performance and contributions.

3.9.6   Western Digital will encourage managers to schedule team meetings to accommodate the hours of parents with childcare responsibilities (who may arrive later in the morning or leave earlier in the afternoon) where feasible while recognizing that business needs take priority.

3.10   **Recruitment and Leadership Development**

3.10.1   Within ninety (90) days of the Effective Date or before, Western Digital will develop a plan to recruit more women into entry and mid-level positions, with a particular focus on positions in the Engineering track. From these initiatives, Western Digital will aspire to increase the number of female candidates for entry and mid-level Engineering openings for each of the two years of this programmatic relief.

AMENDED COLLECTIVE AND CLASS ACTION SETTLEMENT AGREEMENT
1-16

3.10.2  Within ninety (90) days of the Effective Date or before, Western Digital shall develop a plan to encourage leadership development among female employees at the Senior Manager level and below, with a particular emphasis on female employees in the Engineering track.  This plan will include increasing mentorship and training opportunities for female employees

3.10.3  The Compliance Monitor shall provide an executive summary of the plans referenced in 3.10.1 and 3.10.2 to Plaintiffs' counsel as part of the report described in Section 3.2.5.

## 4.    MONETARY RELIEF

4.1    **Monetary Relief**.  No later than twenty-one (21) days after the Effective Date, Western Digital shall wire Seven Million Seven Hundred and Fifty Thousand Dollars ($7,750,000) to the Class Administrator for the Settlement Fund.

4.2    The Settlement Fund shall be deposited into a common fund and allocated as follows, provided the Court finally approves the Settlement:

4.2.1  Seventy-Five Thousand Dollars ($75,000) to the California Labor and Workforce Development Agency ("LWDA").  Should the Court award less, the remainder shall be added to the Settlement Awards Fund (defined in Section 4.4 below);

4.2.2  Up to Fifty Thousand Dollars ($50,000) for the fees and costs of the Class Administrator, including but not limited to the cost of Notice.  Should the Court award less, the remainder shall be added to the Settlement Awards Fund;

4.2.3  Up to Fifty Thousand Dollars ($50,000) for the payment of the Service Award as described in Section 6 and as approved by the Court.  Should the Court award less, the remainder shall be added to the Settlement Awards Fund;

4.2.4  Not to exceed One-Hundred Eighty Thousand Dollars ($180,000) for the payment of all expenses incurred by Plaintiff or Class Counsel in the prosecution of this action and for the costs, excluding attorneys' fees, of any mediation related to the implementation of the programmatic relief (addressed in Section 3). Should the Court award less, the remainder shall be added to the Settlement Awards Fund;

4.2.5  Not to exceed thirty-three and one-third percent (33 1/3%) of the Settlement Fund (Two Million Five Hundred Eighty-Three Thousand and Three Hundred Thirty-Three Dollars ($2,583,333)) for Class Counsel's attorneys' fees.  Should the Court award less, the remainder shall be added to the Settlement Awards Fund; and

4.2.6  Subtracting the amounts allocated in subparts 4.2.1 through 4.2.5, the remainder of the Settlement Fund will be the "Settlement Awards Fund" for individual awards for the Class and the Collective Action Plaintiffs, as described in more detail in Section 4.3. The Settlement Awards Fund will be approximatelyat least Four Million Eight Hundred Eleven Thousand Six Hundred and Sixty-Seven Dollars ($4,811,667), if the Court finally approves the above-described allocations.

4.3    **Calculating the Value of Each Collective Action Plaintiff's and Class Member's Award from the Settlement Awards Fund.**

4.3.1    A Class Member's "Total Individual Income" refers to the following:

**Nationwide Sub-Class Members Who Have Not Signed A General Release:** the aggregate gross income (pre-tax) paid to the Class Member from November 1, 2013 through the date of Order Granting Preliminary Approval, for work in a Covered Position.

**Nationwide Sub-Class Members Who Signed A General Release:** one fourth (1/4) of the aggregate gross income (pre-tax) paid to the Class Member from November 1, 2013 through the date of Order Granting Preliminary Approval, for work in a Covered Position.

**California Sub-Class Members Who Have Not Signed a General Release:** the sum of (i) the aggregate gross income (pre-tax) paid to the Class Member from November 1, 2013 through the date of Order Granting Preliminary Approval, for work in a Covered Position, and (ii) half (1/2) of the aggregate gross income (pre-tax) paid to the Class Member from November 1, 2012 through October 31, 2013, for work in a Covered Position in California.

**California Sub-Class Members Who Signed a General Release**: the sum of: (i) one fourth (1/4) of the aggregate gross income (pre-tax) paid to the Class Member from November 1, 2013 through the date of Order Granting Preliminary Approval, for work in a Covered Position, and (ii) one eighth (1/8) of the aggregate gross income (pre-tax) paid to the Class Member from November 1, 2012 through October 31, 2013, for work performed in a Covered Position in California.

4.3.2    "Total Class Gross Income" equals the aggregate of all Class Members' "Total Individual Income" calculated as set forth in section 4.3.1.

4.3.3    "Fractional Multiplier" is calculated for each Class Member ~~as the Class Member's~~ who does not opt out as the Class Member's Total Individual Income divided by the Total Class Gross Income. "Fractional Multiplier" is calculated for each Collective Action Plaintiff who opts out of the Class Monetary Relief as one fourth (1/4) the Class Action Plaintiff's Total Individual Income divided by the Total Class Gross Income.

4.3.4    A Class Member's individual recovery equals the Fractional Multiplier multiplied by the Settlement Awards Fund. For Class Members who do not opt out of the monetary provisions of this settlement and do not indicate their intention not to participate in the EPA Monetary Relief, 25 percent of the individual recovery will represent consideration for the release of claims under the EPA provided for in this Agreement (the "EPA Consideration"), and the remaining 75 percent of the individual recovery will represent consideration for release of the other claims provided for under this Agreement (the "Class Action Settlement consideration").

AMENDED COLLECTIVE AND CLASS ACTION SETTLEMENT AGREEMENT
1-18

The payment to Collective Action Plaintiffs who opt out of the Class Monetary Relief of this Agreement but do not indicate their intent not to participate in the EPA Monetary Relief will represent solely EPA Consideration.

Collective Action Plaintiffs who opt out of the Class Monetary Relief and who state in their opt-out notice that they intend not to participate in the EPA Monetary Relief (per the process set forth in section 9.3.1) will not receive any Class or EPA Monetary Relief payments under this Settlement.

4.3.5 The Class Administrator shall distribute the individual monetary awards accordingly on the time schedule described herein and pursuant to the orders of the Court.

4.3.6 Separate and apart from the Settlement Fund, the Class Administrator shall calculate and Western Digital shall pay to the Class Administrator the employer's share of any statutory FICA, FUTA, and other payroll taxes arising from any payments to Collective Action Plaintiffs and Class Members for wages in addition to any other sum of payment Western Digital agrees to pay under the terms of the Agreement. The Class Administrator shall be responsible for remitting those taxes to the appropriate state and federal taxing authorities, filing the required tax returns and issuing the required IRS forms to the Class Members.

4.3.7 No later than fifteen (15) calendar days after the Order Granting Final Approval, Western Digital shall provide the Class Administrator with up-to-date contact information for all Collective Action and Class Members.

4.4 **Settlement Fund**. The Settlement Fund shall be controlled by the Class Administrator subject to the terms of this Agreement and any orders of the Court. Interest earned on the Settlement Fund, if any, shall derive from interest earned on uncashed checks, if any, and may be retained by the Class Administrator to cover the cost of administering the resolution of those uncashed checks.

4.4.1 The Settlement Fund shall constitute a "common fund." Upon opening this account, Western Digital shall execute an election statement provided by the Class Administrator which shall be affixed to the initial tax return of the Settlement Fund in order to establish the start date of the Settlement Fund. The Settlement Fund shall be created, managed and disbursed by the Class Administrator under the supervision of Class Counsel and Defendants' Counsel. The Class Administrator shall be the only entity authorized to make withdrawals or payments from the Settlement Fund.

4.4.2 The Class Administrator shall have the obligation to return the entire Settlement Fund (including all income and/or interest generated) to Western Digital within ten (10) days in the event that this Agreement is rendered null and void.

5. **ATTORNEYS' FEES AND COSTS**

5.1 At least thirty (30) days in advance of the deadline to object to the Settlement and to opt out of the Settlement, Class Counsel shall petition the Court for an award of attorneys' fees and costs in a sum not to exceed Two Million Five Hundred Eighty-Three Thousand and Three Hundred Thirty-Three Dollars ($2,583,333) and costs not to exceed $180,000 that shall fully

-19-

AMENDED COLLECTIVE AND CLASS ACTION SETTLEMENT AGREEMENT
1-19

compensate Class Counsel for the attorneys' fees and litigation costs incurred at any time in connection with the Action, including any applicable multiplier, and provide for the future expense, exclusive of attorneys' fees, of any mediation necessary to administer the programmatic relief.  Should the Court award a lesser amount of fees or costs, the difference between this amount and the amount awarded for fees and costs will be added to the Settlement Awards Fund.

5.2    Western Digital agrees that Plaintiff is entitled to an award of reasonable attorneys' fees and costs in the Action.  The Parties agree that the full amount of the attorneys' fees and costs awarded in this action will be paid from the Settlement Fund.

5.3    Any proceedings or Court decisions related to Class Counsel's application for attorneys' fees, costs and expenses, shall not terminate or cancel this Agreement, affect the finality of the Court's Approval Order, affect the release of claims by Class Members and/or Collective Action Members, or otherwise affect the settlement or dismissal of the Litigation.

**6.      SERVICE AWARD**

6.1    At least thirty (30) days in advance of the deadline to object to the Settlement and to opt out of the Settlement, the Named Plaintiff shall apply to the Court to receive a Service Award of up to Fifty Thousand Dollars ($50,000).  Should the Court award a lesser amount, the difference between this amount sought and the amount awarded for Service Awards will be added to the Settlement Awards Fund.

6.2    Western Digital agrees to pay the Court-approved Service Award up to the above-listed amount.  The Service Award and the requirements for obtaining such payment are separate and apart from, and in addition to, the Named Plaintiff's recovery from the Settlement Awards Fund.

6.3    Any proceedings or Court decisions related to Class Counsel's application for the Service Award, shall not terminate or cancel this Agreement, affect the finality of the Court's Approval Order, affect the release of claims by Class Members and/or Collective Action Members, or otherwise affect the settlement or dismissal of the Litigation.

**7.      DISTRIBUTION OF INDIVIDUAL MONETARY AWARDS**

7.1    **Settlement Checks**.  The Class Administrator shall mail all individual monetary awards no later than thirty (30) court days after the occurrence of the Effective Date.  For Class Members who do not opt out of the Class Monetary Relief, each class member's monetary award will be split 25/75 between the EPA consideration and the Class Action Settlement Consideration. Collective Action members who have opted out of Class Monetary Relief but have not indicated their intention not to participate in the EPA action and EPA Monetary Relief as set forth in section 9.3.1 of this Agreement will receive a check for EPA Consideration, and no check for Class Action Settlement Consideration. ~~The face of each check shall clearly state that it must be cashed within one hundred eighty (180) days.~~

The face of each check shall clearly state that it must be cashed within one hundred eighty (180) days. Each check representing EPA consideration shall also state on the check or on

a paystub or document provided therewith, "I have received and read the Class Notice. By endorsing and cashing this check, I consent to join the EPA collective action, elect to participate in the Settlement, and agree to release my claims covered by the Settlement." Each check representing EPA consideration shall also contain on the check or on a paystub or document provided therewith pertinent language adapted from Department of Labor Form WH-58. A copy of the adapted language is attached hereto as Exhibit 1.

7.2 **Reminder Postcards**. The Class Administrator shall, thirty (30) days prior to the check expiration date, send a reminder postcard to those Collective Action Plaintiffs and Class Members who have not yet cashed their settlement award check. The Administrator shall also attempt to contact those Collective Action Plaintiffs and Class Members via telephone (and may also use email if the Class Administrator has an email address for the individual).

7.3 **Returned Settlement Award Checks**. The Class Administrator shall perform an address trace for any undeliverable checks, and re-send the checks if a different address is found, within three (3) business days of receipt of any undeliverable check. If after performing an address trace, the check is still undeliverable or a more current address is not identified, the Class Administrator may employ an investigator to find an updated address for any Class Member whose settlement check totals more than Two Hundred Dollars ($200). The cost of the investigator shall be deducted from the Class Member's individual monetary award.

7.4 **Unused Funds Earmarked for Programmatic Relief Mediation:** Any amount awarded to Class Counsel and earmarked to cover the class's share of costs of mediation related to the implementation of the programmatic relief that is not spent for those purposes by the close of the class period will be redistributed to the Class if feasible, following the same allocation method described in Section 4.3. The distribution shall be by mail to the address used for the original distribution of individual monetary awards, with the funds from any returned or uncashed checks being paid to the *cy pres* recipients in Section 7.5. The remaining amounts earmarked for mediation costs will cover the cost of any such distribution. If redistribution of the amounts earmarked for mediation costs is not feasible, any remaining funds earmarked for mediation costs will be paid to the *cy pres* recipients in Section 7.5.

7.5 **Uncashed Checks and Unused Funds**. If any Collective Action Plaintiff or Class Member fails to cash her award check within one hundred eighty (180) days, the funds shall be distributed in equal shares to Legal Aid At Work and the Legal Aid Society of Orange County, along with any other unused funds, including unused funds earmarked for class administration.

7.6 **Final Report by Class Administrator**. No later than ten (10) days after the check void date, the Class Administrator shall provide Class Counsel and Defendants' Counsel with a declaration providing a final report on the disbursements of all funds.

7.7 **Taxability of Settlement Payments**.

7.7.1 For tax purposes, 50% of payments to Collective Action Plaintiffs and Class Members pursuant to Section 4.3 shall be treated as W-2 wage payments and 50%

-21-

AMENDED COLLECTIVE AND CLASS ACTION SETTLEMENT AGREEMENT

1-21

of such payments shall be treated as 1099 non-wage income as compensatory or liquidated damages/non-wage damages, interest, and additionally for the California Sub-Class only, penalties.

7.7.2   Payments treated as W-2 wages pursuant to Sections 4.3 shall be made net of all applicable employment taxes, including, without limitation, federal, state, and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2.  Payments treated as compensatory or liquidated damages/non-wage damages and interest pursuant to Section 7.7.1 shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099, as shall penalties for the California Sub-Class only.  Any Service Award made pursuant to Section 6 shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

7.7.3   In the event that it is subsequently determined by a tax authority that any Collective Action Plaintiff or Class Member owes any additional taxes with respect to any money distributed under this Agreement, it is expressly agreed that the determination of any tax liability is between the payment recipient and the tax authorities, and that Western Digital shall not be responsible for the payment of such taxes, including any interest and penalties.  Each Collective Action Plaintiff and Class Member agrees to indemnify Western Digital for any such taxes, interest, and penalties owed by her.

## 8.   FORM OF NOTICE

8.1   All Collective Action Plaintiffs and Class Members shall receive a Notice substantially in the form evidenced by Exhibit A, attached hereto.  The Notice shall be tailored for each individual and have pre-printed information regarding that individual's name, contact information, and information pertinent to the estimated allocation for the Named Plaintiff, Collective Action Plaintiff, and/or Class Member.  The Notice shall be enclosed in an envelope substantially in the form evidenced by Exhibit B, attached hereto.

## 9.   ADMINISTRATION OF SETTLEMENT

9.1   **Class Administrator's Duties**.

9.1.1   The Class Administrator shall (1) mail the Notice to the Collective Action Plaintiffs and Class Members after performing any address checks required by Section 9.2.3; (2) respond to questions from Collective Action Plaintiffs and Class Members; (3) distribute individual monetary awards to Collective Action Plaintiffs and Class Members; (4) maintain a toll-free number for communicating with Collective Action Plaintiffs and Class Members; (5) no later than 30 days from the Effective Date, distribute the Service Award to Plaintiff; (6) no later than 30 days from the Effective Date, distribute amounts approved by the Court as Attorneys' Fees and Incurred Costs to Class Counsel; (7) no later than 30 days from the Effective Date

forward payment to the LWDA; (8) determine the employer's share of taxes owed and timely remit them to the taxing authorities, timely file required state and federal tax returns, and take all other actions required by Sections 7; (9) no later than 21 days from the check-void Date, distribute funds to the *cy pres* recipients; (10) after the conclusion of the period of programmatic relief, mail checks to ~~class members~~Class Members and Collective Action Plaintiffs or distribute funds to appointed *cy pres* recipients; and (11) perform any other duties necessary to carry out its responsibilities described in this Agreement.

9.1.2   The Parties agree to cooperate with the Class Administrator and assist it in any way possible in administering the terms of this Agreement. The Parties agree to cooperate in the settlement administration process and work with the Class Administrator in making all reasonable efforts to control and minimize the costs and expenses incurred in the administration of the Settlement

9.1.3   At least seven (7) days prior to the Final Approval Hearing, the Class Administrator shall provide Class Counsel and Defendants' Counsel with a statement detailing its costs of administration, which Class Counsel shall file with the Court.

9.1.4   The Class Administrator will purchase a domain name and establish a class website on which shall be posted key documents and information relevant to the class action. This website must be available to the public no later than two (2) days after the date on which the Class Administrator mails the Notice of Settlement.

9.2   **Notice Procedures**.

9.2.1   No later than ~~sixty (60~~ninety (90) days after the date of entry of the order granting Preliminary Approval, Western Digital shall provide to the Class Administrator a list of all Collective Action Plaintiffs and Class Members, including for each Class Member: full name (maiden and married names, where applicable), last known home address, email (if known), telephone numbers(s), employee identification number, social security number, whether the Class Member has signed a general release, and aggregate gross income (pre-tax) during each relevant period, in a format reasonably acceptable to the Class Administrator. The Class Administrator shall maintain this list in the strictest confidence and shall not disclose it to anyone except Class Counsel, who may receive the employee identification number and the aggregate gross income (pre-tax) during each relevant period, and other such information necessary to advise class members or to administer this Settlement.

9.2.2   No later than seventy-five (75) days after the date of entry of the order granting Preliminary Approval, the Class Administrator shall mail the Notice in substantively the form attached hereto as Exhibit A, and as approved by the Court, to the Collective Action Plaintiffs and Class Members, by United States first class mail, postage prepaid. The Parties intend to provide actual notice to each Collective Action Plaintiff and Class Member, to the extent practicable.

9.2.3   In order to provide the best notice practicable, the Class Administrator shall run the list of Collective Action Plaintiffs and Class Members through the United

-23-

States Postal Service's National Change of Address database before mailing the Notice.

9.2.4    If Notices are returned with forwarding addresses, the Class Administrator shall re-mail the Notice to the new address within three (3) business days.

9.2.5    In the event that Notices are returned to the Class Administrator by the United States Postal Service because the address of the recipient is no longer valid, i.e., the envelope is marked "Return to Sender," the Class Administrator shall perform a standard skip trace in an effort to ascertain the current address of the particular individual in question and, if such an address is ascertained, the Class Administrator shall re-send the Notice within three (3) business days of receiving the newly ascertained address.

9.2.6    With respect to envelopes marked "Return to Sender," the Class Administrator may also call any identified last-known telephone numbers (and telephone numbers updated through public and proprietary databases) of Collective Action Plaintiffs and/or Class Members to obtain current addresses, and may request from Defendants' Counsel updated contact information for those currently employed by Western Digital.  Defendants' Counsel will provide updated contact information for those currently employed by Western Digital in response to requests from the Class Administrator.

9.2.7    During the sixty (60) day Notice Period, the Class Administrator shall provide the Parties with weekly summaries as to the status of Notice mailings, including the number of Notices which were re-mailed, the number of successful and unsuccessful mailings, and the number of individuals who have opted-out and/or objected.

9.2.8    The Class Administrator shall provide to Defendants' Counsel and Class Counsel, at least ten (10) days prior to the close of the Notice Period, a list of persons potentially eligible to be Collective Action Plaintiffs and Class Members to whom notices were returned as undeliverable and for whom efforts to obtain an alternative address failed.

9.2.9    Class Counsel shall provide the Court, at least seven (7) days prior to the Final Approval Hearing, a declaration by the Class Administrator of due diligence and proof of mailing with regard to the mailing of the Notice. This declaration shall also include the number and names of Class Members and Collective Action Plaintiffs who opted-out or objected.

9.3    **Opt-Outs**

9.3.1    Individuals in the Class may request exclusion from the monetary relief provisions of the Settlement by "opting out" no later than sixty (60) days after Notice is first mailed (the "Opt-out Period").  Any individual who chooses to do so must mail a written, signed statement to the Class Administrator that she is opting out ("Opt-Out Statement").  The Opt-Out Statement must contain the name, address, and telephone number of the individual to be valid.  It must also contain words to the

AMENDED COLLECTIVE AND CLASS ACTION SETTLEMENT AGREEMENT

Case No. _____

1-24

following ~~words~~effect in order to be valid: "I decline to provide a release of claims and instead elect to exclude myself from the ~~monetary relief~~Class Monetary Relief provisions in the Settlement in *Chen v. Western Digital Corporation et al*. That means I will not be entitled to any of the monetary proceeds of the Settlement~~.~~ on the Rule 23 Class claims but may still be eligible for relief on the EPA claims provided that I elect to participate in the EPA portion of the action and settlement. I will, however, be covered by the injunctive relief provided by the Settlement, by which I am bound and from which I may not exclude myself."

To be effective, such Opt-Out Statement must be sent via mail and postmarked by a date certain to be specified on the Notice. The postmark date of the mailing envelope shall be the exclusive means used to determine whether a request for exclusion (opt-out) has been timely submitted. The opt-out request must be personally signed in ink by the Class Member who seeks to opt-out. No opt-out request may be made on behalf of a group of Class Members.

Class Members who opt out of the Class Monetary Relief and also intend not to participate in the EPA portion of the action, settlement and EPA Monetary Relief, may include the following statement in their opt-out letter: "I elect not to participate in the EPA portion of the action and settlement. That means I will not be entitled to any of the EPA money and will not release my claims under the EPA." Class Members who include this statement shall not receive a check representing EPA Settlement Consideration. Class Members who opt out of the Class Monetary Relief but who do not include this language, will receive a check representing EPA Settlement Consideration, but will not receive a check representing Class Action Settlement Consideration.

~~9.3.1~~9.3.2    The Class Administrator shall stamp on the original of any Opt-Out Statement that it receives the date it was received, and shall serve copies of each Opt-Out Statement on Class Counsel and Defendants' Counsel by email no later than two (2) business days after receipt thereof. The Class Administrator shall, within twenty-four (24) hours after the end of the Opt-Out Period, send a final list of all Opt-Out Statements to Class Counsel and Defendants' Counsel by email. The Class Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Class Administrator is relieved of its duties and responsibilities under this Agreement.

~~9.3.2~~9.3.3    The share of any Opt-Out, as calculated pursuant to Section 4.3, shall remain in the Settlement Awards Fund for distribution to those who did not timely opt out of the Settlement.

9.4    **Objections**

9.4.1    Rule 23 Class Members and Collective Action Plaintiffs who wish to present objections to the Settlement at the Fairness Hearing must first do so in a written, signed statement. To be considered, such objections must be mailed to the Class Administrator no later than sixty (60) days after Notice is first mailed. The postmark

-25-

AMENDED COLLECTIVE AND CLASS ACTION SETTLEMENT AGREEMENT

date of the objection shall be the exclusive means for determining that an objection is timely. The statement must contain the name, address, and telephone number of the Class Member or Collective Action Plaintiff to be valid. It must also contain the words "I object to the settlement in *Chen v. Western Digital Corporation et al.*," and set forth the legal and factual basis for the objection. Class Members and Collective Action Plaintiffs who fail to make objections in the manner specified herein shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Agreement.

9.4.2 The Class Administrator shall stamp on the original objection the date it was received, and shall send copies of each objection to Class Counsel and Defendants' Counsel by email not later than two (2) business days after receipt thereof. Class Counsel shall file the objections with the Clerk of Court within five business (5) days after the end of the Opt-Out Period.

9.4.3 An objector who wishes to appear at the Fairness Healing must file with the Clerk of the Court and serve upon counsel designated in Section 13.3, a notice of intention to appear at the Fairness Hearing ("Notice of Intention to Appear") no later than sixty (60) days after the first mailing of the Notice. The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objecting Class Member or Collective Action Plaintiff (or her counsel) shall present to the Court in connection with the Fairness Healing. Any Class Member or Collective Action Plaintiff who does not provide a Notice of Intention to Appear in complete accordance with the deadlines and other specifications set forth in the Notice, or who has not filed an Objection in complete accordance with the deadlines and other specifications set forth in this paragraph and the Notice, shall, subject to the Court's final determination in the exercise of its discretion, be barred from speaking or otherwise presenting any views at any Fairness Hearing.

9.4.4 An objector may withdraw her objections at any time. Any lawyer representing a Class Member or Collective Action Plaintiff for the purpose of making objections must also file a Notice of Appearance with the Court by the objection deadline and must also serve copies by mail to counsel for the Parties.

9.4.5 Any individual who has requested exclusion by submitting a valid Opt-Out Statement may not submit objections to the Settlement.

9.4.6 Plaintiff and/or Western Digital may file with the Court written responses to any objections at least seven (7) days before the Fairness Hearing.

9.4.7 **Waiver of Right to Appeal**. Provided that the judgment against Western Digital is consistent with the terms and conditions of this Agreement, then Named Plaintiff, Collective Action Plaintiffs, and Class Members who did not timely submit an objection to the Settlement and their counsel, as well as Western Digital and its counsel, hereby waive any and all rights to appeal from the judgment against Western Digital, including all rights to any post-judgment proceeding and appellate proceeding, such as a motion to vacate judgment, a motion for new trial, a motion under Federal Rule of Civil Procedure 60, and any extraordinary writ, and the

judgment therefore shall become final and non-appealable at the time it is entered. The waiver does not include any waiver of the right to oppose any appeal, appellate proceedings, or post-judgment proceedings.

9.5 **No Solicitation of Objection or Request to Opt Out**.  The Parties agree that the decision to opt out should be left to the individual Class Members.  If contacted by a Class Member, Class Counsel may provide any advice or assistance to any Class Member who requests them to do so.  If Defendants' Counsel is contacted by Class Members regarding the Settlement, counsel shall refer the call or communication to Class Counsel.  In addition, at no time shall Plaintiff, Western Digital, or their respective counsel seek to solicit or otherwise encourage Class Members or any other persons to submit written objections to the settlement or to encourage Class Members to appeal the Court's final approval order and entry of judgment, or to submit opt-out forms.

**10.    PRELIMINARY AND FINAL APPROVAL**

10.1 **Preliminary Approval by the Court**.  ~~Within twenty-eight (28) days of the execution of this Agreement, Plaintiff shall submit to the Court a Motion for Preliminary Approval of the Settlement ("Preliminary Approval Motion").  The Preliminary Approval Motion shall seek the setting of dates for opt-outs, objections, and a Fairness Hearing and shall present the [Proposed] Order Granting Preliminary Approval attached hereto as Exhibit C~~The Court has granted Conditional preliminary approval of the settlement and set a final fairness hearing. In accordance with the Court's Order (Dkt. 61), the parties will provide the Court with the additional information and materials requested and seek authorization to send out the Class Notice.

10.2 **Final Order and Judgment from the Court**.  Plaintiff shall seek to obtain from the Court an Order Granting Final Approval.  The motion shall, among other things, seek: (a) final certification of the Class for purposes of settlement; (b) final approval of settlement of the Collective Action Plaintiffs' EPA claims; (c) final approval of settlement of the Class Members' claims as fair, adequate, reasonable, and binding on all Class Members who have not opted out; and (d) an entry of judgment in accordance with this Agreement.

10.3 **Fairness Hearing**.  The Fairness Hearing shall be held at the Court's convenience, but not earlier than ninety (90) days after CAFA notices are served.

10.4 **Effect of Non-Approval**.  If the Court denies Plaintiff's motion for Final Approval of this Agreement, or if a decision granting Final Approval is reversed on appeal, the Agreement may be voided by either party.  In such event:

10.4.1 Nothing in this Agreement shall be construed as a determination, admission, or concession of any substantive or procedural issue in the Litigation, and nothing in this Agreement may be offered into evidence in any hearing or trial, or in any subsequent pleading or in any subsequent judicial, arbitral, or administrative proceeding;

10.4.2 The Parties expressly reserve their rights with respect to the prosecution, defense, and appeal of the Litigation as if this Agreement never existed.  In particular,

AMENDED COLLECTIVE AND CLASS ACTION SETTLEMENT AGREEMENT
Case No. _____
1-27

Western Digital does not waive, but rather expressly reserves, all rights to challenge any and all claims and allegations asserted in the Litigation upon all procedural and substantive grounds, including, without limitation, the ability to challenge collective and/or class action treatment on any grounds and to assert any and all potential defenses or privileges.  The Parties agree that Western Digital retains and reserves these rights, and they agree not to take a position to the contrary.  Specifically, the Parties agree that, if the Litigation were to proceed, they will not present any argument based on this Agreement, or any exhibit, attachment, act performed, or document executed pursuant to this Agreement; and

10.4.3  The Parties shall each bear their own costs, if any, incurred by virtue of the existence of this Agreement.

## 11.    RELEASE

11.1    **Class Members, including Named Plaintiff.**  Upon the Effective Date, and except as to such rights or claims as may be created by this Agreement, each member of the Class, who does not timely opt out pursuant to Section 9.3, on her behalf and on behalf of her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges all Released Parties from all claims asserted in the Complaint under applicable state, local, and federal law that were brought in the Litigation or that are based on the same facts and circumstances as the claims brought in the litigation.  The rights and claims released ("Released Claims") include:  (i) claims for gender-based unequal pay, and (ii) claims for disparate treatment and pattern and practice discrimination based on gender with respect to all forms of compensation (including but not limited to salary, bonus, and stock or equity awards), job code placement, and denial of promotion, and (iii) claims for disparate impact discrimination based on gender with respect to all forms of compensation (including but not limited to salary, bonus and stock or equity awards), job code placement, and denial of promotion.  The Released Claims, as specified here, arise under the following laws and their implementing regulations:  (i) Title VII of the Civil Rights Act of 1964, and (ii) for those who work or worked in California:  the California Fair Employment and Housing Act, including but not limited to Cal. Gov't Code §12940, *et seq*.; the California Equal Pay Act, Cal. Lab. Code §1197.5; the California Fair Pay Act, Cal. Lab. Code §1197.5 (as of 2016); the California's Business & Professions Code §17200, *et seq*., and the Private Attorneys General Act (PAGA), Cal. Lab. Code §§2698-2699; and (iii) for those who work or worked in the District of Columbia or in states outside of California, the state and local laws of similar import in their respective jurisdictions.  Only as to the claims released herein, each member of the Class waives all rights and benefits afforded by Section 1542 of the Civil Code of the State of California, and does so understanding the significance of that waiver.  Section 1542 provides:

A general release does not extend to claims which the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her would have materially affected his or her settlement with the debtor or released party.

11.2    **Collective Action Plaintiffs who Cash EPA Settlement Checks, including Named Plaintiff**.  Upon the Effective Date, and except as to such rights or claims as may be created by this Agreement, each Collective Action Plaintiff, on behalf of her respective current,

-28-

AMENDED COLLECTIVE AND CLASS ACTION SETTLEMENT AGREEMENT
1-28

former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges all Released Parties from all gender-based discrimination claims she has or may have involving alleged unequal, disparate, or unfair compensation under the Equal Pay Act, 29 U.S.C. §206(d), that were brought in the Litigation or that are based on the same facts and circumstances as the claims brought in the Litigation. Collective Action Plaintiffs who ~~cash~~negotiate their ~~settlement checks~~check for EPA consideration shall be deemed to have accepted this Release~~.~~ and to have opted into the collective action. Only as to the claims released herein, each Collective Action Plaintiff who negotiates a check for EPA consideration waives all rights and benefits afforded by Section 1542 of the Civil Code of the State of California (quoted in Sections 11.1)~~)~~,) with regard to the released EPA claims, and does so understanding the significance of that waiver. ~~C~~ollective Action Plaintiffs who do not ~~cash~~negotiate their ~~settlement checks but~~check for EPA consideration who do not opt-out of the Rule 23 Class will be deemed members of the Rule 23 Class and will be bound by the release set forth above in Section 11.1, but will not be bound by the releases set forth in this Section 11.2.

11.3    Nothing in this Agreement shall be construed to bar any claims of the Named Plaintiff, Collective Action Plaintiffs, or the Class Members based on or arising out of events occurring after the last day of the Opt-out Period (as defined in Section 9.3.1).

## 12.    WESTERN DIGITAL'S RIGHT TO WITHDRAW OR MODIFY AGREEMENT

12.1    If more than three percent (3%) of the Class Members validly elect not to participate in the Settlement by validly opting-out pursuant to Section 9.3.1, Western Digital shall have the absolute right, in its sole discretion and notwithstanding any other provisions of this Agreement, but subject to all the provisions and time limits of this Section, to either withdraw in writing from and rescind this Agreement in which case all actions taken in its furtherance shall be null and void for all purposes and may not be used or introduced in further litigation except to determine whether Western Digital is entitled to withdraw from the Agreement and has validly done so, or to modify this Agreement through further negotiations with Class Counsel.  Western Digital must exercise this right within twenty-one (21) days after the Class Administrator sends the final list of all Opt-Out Statements to Class Counsel and Defendants' Counsel by email pursuant to Section 9.3.2.  If more than three percent (3%) of the Class Members opt out of the monetary relief provisions of the Settlement, and Western Digital exercises its right to void the Settlement, Western Digital shall pay the Class Administrator's reasonable fees and expenses incurred as of the date that Western Digital exercises its right to void the Settlement.

12.2    If Named Plaintiff submits a timely and complete request for exclusion, Western Digital shall have the absolute right, in its sole discretion and notwithstanding any other provisions of this Agreement, but subject to all the provisions and time limits of this Section, to withdraw in writing from this Agreement, or to modify this Agreement through further negotiations with Class Counsel.  If Western Digital does withdraw in conformity with the provisions and time limits of this Section, the Agreement will be null and void for all purposes and may not be used or introduced in further litigation except to determine whether Western Digital is entitled to withdraw from the Agreement and has validly done so.  Western Digital shall have twenty-one (21) days after the Class Administrator sends the final list of all Opt-Out Statements to Class Counsel and Defendants' Counsel by email upon

AMENDED COLLECTIVE AND CLASS ACTION SETTLEMENT AGREEMENT

Case No. _____

1-29

conclusion of the notice period to withdraw from (or modify through negotiation) this Agreement on the basis that Named Plaintiff has submitted a timely and complete request for exclusion.

**13.    INTERPRETATION AND ENFORCEMENT OF AGREEMENT**

13.1    **Entire Agreement**.  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

13.2    **Binding Effect**.  Upon execution of this Agreement by the Parties and their counsel, this Agreement shall be binding upon the Parties unless the Court fails to approve the Agreement as set forth herein.

13.3    **Notices to Counsel**.  All notices to counsel required or desired to be given under this Agreement shall be in writing and by overnight mail and e-mail to David Sanford and Danielle Fuschetti of Sanford Heisler Sharp, LLP, Felicia Medina of Medina Orthwein LLP, and Susannah Howard of O'Melveny & Myers LLP for Western Digital, their respective addresses set forth below (or to such other address as any such party of counsel may designate in a notice):

David Sanford
**Sanford Heisler Sharp, LLP**
1350 Avenue of the Americas, Suite 3100
New York, NY 10019
dsanford@sanfordheisler.com

Danielle Fuschetti
~~SANFORD HEISLER SHARP~~
**Sanford Heisler Sharp**, LLP

111 Sutter Street, Suite 975

San Francisco, CA  94104

dfuschetti@sanfordheisler.com

Felicia Medina
**Medina Orthwein LLP**
1322 Webster St. Ste. 200
Oakland, CA 94612
fmedina@medinaorthwein.com

Susannah Howard
**O'Melveny & Myers LLP**
Two Embarcadero Center
San Francisco, CA  94111
showard@omm.com

13.4    **Arm's-Length Transaction; Materiality of Terms**.  The Parties have negotiated all the terms and conditions of this Agreement at arm's length.  All terms and conditions of this

-30-

AMENDED COLLECTIVE AND CLASS ACTION
SETTLEMENT AGREEMENT
1-30

Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

13.5    **Construction**.  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

13.6    **Severability**.  Following the Effective Date, if any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful, or unenforceable, the remaining portions of this Agreement shall remain in full force and effect, subject to the limitations set forth above.

13.7    **Governing Law**.  This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of the State of California, without regard to its choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

13.8    **Continuing Jurisdiction**.  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby for two (2) years following the Effective Date.

13.9    **Waivers, etc. to Be in Writing**.  No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by, or on behalf of all Parties and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

13.10   **Counterparts**.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Parties had signed the same instrument.

13.11   **Facsimile/Electronic Signatures**.  Any Party may execute this Agreement by causing her or its counsel to sign on the designated signature block and transmitting that signature page via facsimile or email to counsel for the other Party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile or email.

## 14.    DUTIES OF THE PARTIES FOLLOWING COURT APPROVAL

In connection with the Final Approval by the Court of this Agreement, Class Counsel, and Counsel for Defendant will submit a proposed final order and judgment:

(a) Granting final approval to the Agreement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions;

(b) Granting final certification of the Settlement Class;

(c) Granting final certification for settlement purposes of the conditionally certified EPA Collective Action;

(d) Dismissing the Civil Action with prejudice and permanently barring all members of the Settlement Class including the Class Representative from prosecuting against any Released Parties any of the Released Claims (as defined in Section 11.1); and

(e) All materials, including data, provided by Western Digital or its counsel to Class Counsel or Dr. Steward shall be destroyed by Class Counsel and Dr. Steward within one-hundred eighty (180) days after the Effective Date, with the exception that the Parties may retain copies of their work product; copies of all filed documents (whether or not filed under seal or submitted to the court without being officially filed); any materials necessary to oversee compliance with this Agreement, except that all data shall be destroyed, and Defendants' Counsel shall retain and maintain that information in the form in which it was provided during the term of this Settlement Agreement.

AMENDED COLLECTIVE AND CLASS ACTION SETTLEMENT AGREEMENT

1-32

Case No. _____

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 1**

Under the Settlement in *Chen v. Western Digital Corporation, et al*., Case No. 8:19-cv-00909-JLS-DFM, you are receiving an award of payment of wages, employment benefits, or other compensation alleged to be due to you from Western Digital Corporation, 5601 Great Oaks Parkway San Jose, CA 95119, for the period of time covered by the Class Action Settlement Agreement in that case. The amount of the payment you are receiving is shown below.

Plaintiff in *Chen v. Western Digital Corporation, et al*., Case No. 8:19-cv-00909-JLS-DFM, alleges that Western Digital Corporation engaged in systematic gender discrimination against female employees and that the employees are entitled to compensation lost as a result of such discrimination. The parties reached a Settlement, approved by the Court, which reaches a compromise on the amount of compensation that the employees will receive. Individual shares of the settlement, including your share as set forth below, are calculated based on a formula contained in the Class Action Settlement Agreement and approved by the Court in that case.

This payment is in consideration for your release of claims under the Equal Pay Act.

Gross Amount Back Wages/Liquidated Damages: [amount]

Legal Deductions: [amount]

Net Amount Received: [amount]

NOTICE TO EMPLOYEE UNDER THE EQUAL PAY ACT (EPA) - Your acceptance of this payment of wages and other compensation provided under this settlement means that you have given up the right you have to bring suit on your own behalf for the payment of such unpaid wages under the EPA for the period on or before the last day of the Opt-out Period and an equal amount in liquidated damages, plus attorney's fees and court costs under Section 16(b) of the FLSA. Generally, a 2-year statute of limitations applies to the recovery of back wages.

DATED: _____             By: _____

                                  DAVID SANFORD
                                  SANFORD HEISLER SHARP, LLP

                           *Attorneys for Plaintiffs, the Rule 23 Class, and the*
                           *Collective Action Class*


DATED: _____             By: _____

                                  YUNGHUI CHEN
                           *Named Plaintiff and Class Representative*


DATED: _____             By: _____

                                  APALLA U. CHOPRA
                                  O'MELVENY & MYERS LLP

                           *Attorneys for Defendants Western Digital*
                           *Corporation and Western Digital Technologies, Inc.*


DATED: _____             By: _____

                                  ERIN HELLER
                           Who is authorized to sign for *WESTERN DIGITAL*