David Sanford (DC SBN 457933 *admitted Pro Hac Vice*)
dsanford@sanfordheisler.com
Russell Kornblith (CA SBN 289329)
rkornblith@sanfordheisler.com
Andrew Melzer (NY SBN 4270682, *admitted Pro Hac Vice*)
amelzer@sanfordheisler.com
SANFORD HEISLER SHARP, LLP
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651

Felicia Medina (CA SBN 255804)
fmedina@medinaorthwein.com
MEDINA ORTHWEIN, LLP
1322 Webster St., #200
Oakland, CA 94612
Telephone: (202) 674-9549

Aashish Desai (CA SBN 187394)
Aashish@desai-law.com
DESAI LAW FIRM, P.C.
3200 Bristol St. Suite 650
Costa Mesa, CA 92626
Telephone: (949) 614-5830

*Attorneys for the Plaintiff, Classes, and Collective*
*[additional attorneys listed after signature page]*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YUNG-HUI CHEN, on behalf of herself and all others similarly situated, PLAINTIFFS,<br><br>vs.<br><br>WESTERN DIGITAL CORPORATION AND WESTERN DIGITAL TECHNOLOGIES, INC., DEFENDANTS. | Case No.: 8:19-cv-00909-JLS-DFM<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: November 20, 2020<br>Time: 10:30 a.m.<br>Courtroom: 10A<br>Judge: Hon. Josephine L. Staton<br>Complaint Date: May 14, 2019<br>Trial Date: None |

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.   **INTRODUCTION** ................................................................... 8

II.  **FACTUAL BACKGROUND** ................................................ 8

   A. Summary of the Claims .................................................. 8

   B. Preliminary Approval .................................................... 9

   C. The Notice Process and the Class' Response ........................... 10

III. **THE SETTLEMENT BEFORE THE COURT** ........................ 10

   A. $7,750,000 Settlement Fund ........................................ 10

   B. Settlement Awards Fund and Class Member Payments ............ 11

   C. Programmatic Relief ................................................... 12

   D. Release of Claims ...................................................... 13

   E. *Cy Pres* Recipients .................................................. 13

IV. **ARGUMENT** ............................................................... 14

   A. Class Action Settlements Are Favored and Should Be Approved When Fundamentally Fair, Adequate, and Reasonable ........................ 14

      *1. There Is a Strong Policy in Favor of Settlements, Particularly in Employment Discrimination Class Actions* ....................... 14

      *2. The Court Need Only Determine Whether the Settlement Is "Fair as a Whole"* ................................................ 15

   B. The Settlement Should Be Afforded a Strong Presumption of Fairness ... 16

      *1. The Parties' Arm's Length Negotiations, Significant Pre-Settlement Discovery, and Absence of a Reversionary Clause Support Approval.* 16

      *2. Counsel Are Skilled and Seasoned Employment Lawyers* ............. 17

      *3. No Employees Have Objected to the Settlement* .................... 18

   C. The Settlement Is Fair, Reasonable, and Adequate ................... 18

      *1. The Strength of the Case, and the Risk, Complexity, and Duration of Further Litigation* ........................................... 18

      *2. The Risks of Maintaining Class Status Through Trial* ............. 20

      *3. The Benefits Provided by the Settlement* ....................... 20

1

4. *The Extent of Discovery and Stage of the Proceedings* ........................ 29

5. *The Experience and Views of Counsel* ................................................. 29

6. *The Reaction of the Class Members to the Proposed Settlement* ......... 29

D. The Settlement Also Merits Approval Under the EPA ............................. 31

**V.  CONCLUSION** ............................................................................................... 32

PLAINTIFF'S MOTION FOR FINAL APPROVAL
Case No. 3:16-cv-01885-JLS-DHB

1

# <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Acosta v. Evergreen Moneysource Mortg. Corp.*, No. 2:17-cv-00466, 2019 WL 6051117 (E.D. Cal. Nov. 15, 2019)..................................................................... 24

*Altamirano v. Shaw Indus., Inc.*, No. 13-cv-00939, 2016 WL 1271046 (N.D. Cal. Mar. 31, 2016)........................................................................................................ 24

*Altier v. Worley Catastrophe Response*, Civ. No. 11-241, 2012 WL 161824 (E.D. La. Jan. 18, 2012)............................................................................................... 29

*Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013)......... 14, 28

*Berkley v. United States*, 59 Fed. Cl. 675 (Fed. Cl. 2004)......................... 12, 13, 25

*Betancourt v. Advantage Hum. Resourcing, Inc.*, No. 14-cv-01788, 2015 WL 12661922 (N.D. Cal. Aug. 28, 2015) ............................................................. 15, 24

*Block v. Revlon, Inc.*, No. 80 Civ. 1378, 1985 WL 56614 (S.D.N.Y. May 10, 1985). ................................................................................................................ 13, 21

*Bond v. Ferguson Enters.*, No. 1:09-cv-01662, 2011 WL 284962 (E.D. Cal. Jan. 25, 2011) ................................................................................................................ 17

*Booth v. Strategic Realty Tr. Inc.*, No. 13-cv-04921, 2015 WL 3957746 (N.D. Cal. June 28, 2015).......................................................................................................... 25

*Boyd v. Bechtel, Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979)................................. 21

*Bryan v. PPG*, 494 F.2d 799 (3d Cir. 1974) ....................................................... 19

*Campanelli v. Hershey Co.*, No. C 08-1862, 2011 WL 3583597 (N.D. Cal. May 4, 2011) ....................................................................................................................... 30

*Carlson v. C.H. Robinson Worldwide, Inc.*, No. CIV 02-3780, 2006 WL 2671105 (D. Minn. Sept. 18, 2006) ..................................................................................... 26

Carson v. Am. Brands, Inc., 450 U.S. 79 (1981).................................................. 12

*Chiaramonte v. Pitney Bowes, Inc.*, No. 06 CV 1507, 2008 WL 510765 (S.D. Cal. Feb. 25, 2008) ........................................................................................................ 22

*Chu v. Wells Fargo Invs. LLC*, No. C 05-4526, 2011 WL 672645 (N.D. Cal. Feb. 15, 2011) ............................................................................................. 16, 18, 26, 27

*Churchill Village, LLC v. General Electric*, 361 F.3d 566 (9th Cir. 2004)..... 14, 16

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ........................... 19

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545 (N.D. Ga. 2007) ....................................................................................................................... 26

*Cook v. Howard Indus., Inc.*, No. 2:11CV41, 2013 WL 943664 (S.D. Miss. Mar. 11, 2013) ................................................................................................................. 22

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) .................................................. 12

*Couser v. Comenity Bank*, 125 F. Supp. 3d 1034  (S.D. Cal. 2017)...................... 18

*Cruz v. Sky Chefs, Inc.*, No. C–12–02705, 2014 WL 7247065 (N.D. Cal. Dec. 19, 2014) ............................................................................................................ 24

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*, No. C 06-3903, 2008 WL 4667090 (N.D. Cal. Oct. 22, 2008)...................................................................... 20

*del Toro Lopez v. Uber Techs., Inc.*, No. 17-cv-06255, 2018 WL 5982506 (N.D. Cal. Nov. 14, 2018)............................................................................. 22

*DeLeon v. Ricoh USA, Inc.*, No. 18-cv-03725, 2020 WL 1531331 (N.D. Cal. Mar. 31, 2020) ........................................................................................ 23

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980). .................... 21

*Ferrell v. Buckingham Property Mgmt.*, No. 1:19-cv-00332, 2020 WL 291042 (E.D. Cal. Jan. 21, 2020).................................................................... 23

*Flores v. ADT LLC*, No. 1:16-cv-0029, 2018 WL 1062854 (E.D Cal. Feb. 27, 2018) ............................................................................................................ 22

*Franco v. Ruiz Food Prods., Inc.*, No. 1:10–cv–02354, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012)............................................................................... 16

*Gamble v. Boyd Gaming Corp.*, No. 2:13-cv-01009, 2015 WL 4874276 (D. Nev. Aug. 13, 2015) ..................................................................................... 29

*Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-324, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) ...................................................................................... 16

*Giroux v. Essex Property Tr., Inc.*, No. 16-cv-01722, 2019 WL 2106587 (N.D. Cal. May 14, 2019) ............................................................................. 28

*Greer v. Dick's Sporting Goods, Inc.*, No. 2:15-CV-01063, 2020 WL 5535399 (E.D. Cal. Sept. 15, 2020)................................................................... 14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .............................. 13, 28

*Hensley v. Eppendorf N. Am., Inc.*, No. 14-CV-419, 2014 WL 2566144 (S.D. Cal. June 6, 2014)....................................................................................... 29

*Holden v. Burlington N. Inc.*, 665 F. Supp. 1398 (D. Minn. 1987)...................... 19

*Holloway v. Best Buy Co., Inc.*, No. C-05-5056, 2011 WL 13257999  (N.D. Cal. Nov. 9, 2011) ..................................................................................... 20

*In re Gen. Motors Corp.*, 55 F.3d 768 (3d Cir. 1995) ......................................... 14

*In re High-Tech Employees Antitrust Litig.*, No. 11-CV-02509, 2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) ........................................................... 23, 25

*In re LifeLock, Inc.*, No. 08-1977, 2010 WL 11627648 (D. Ariz. Aug. 25, 2010) 20

*In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015)................. 28

4

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) .......................... 27

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............... 16

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........... 14

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10ML 02151, 2013 WL 3224585 (C.D. Cal. July 24, 2013) ....................................................................................................... 17

*Ingram v. Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001).................................. 20

*K.H. v. Sec'y of Dep't of Homeland Sec.*, No. 15-cv-02740, 2018 WL 6606248 (N.D. Cal. Dec. 17, 2018) ................................................................................. 21

*Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823 (N.D. Cal. 2017) ........................... 17

*Kurihara v. Best Buy Co.*, No. C-06-1884, 2009 WL 10692779 (N.D. Cal. Oct. 14, 2009), .............................................................................................................. 24

*Kurihara v. Best Buy Co.*, No. C-06-1884, 2010 WL 11575623 (N.D. Cal. Apr. 1, 2010) .............................................................................................................. 24

*Lane v. Brown*, 166 F. Supp.3d 1180 (D. Or. 2016)....................................... 20, 28

*Lee v. Timberland Co.*, No. C 07-2367, 2008 WL 2492295 (N.D. Cal. June 19, 2008) .............................................................................................................. 29

*Linney v. Alaska Cellular P'ship*, 151 F.3d 1234 (9th Cir. 1998), .............. 6, 12, 18

*Long v. HBSC USA, Inc.*, No. 14 Civ 6233, 2015 WL 5444651 (S.D.N.Y. Sept 11, 2015) ........................................................................................................ 19

*Ma v. Covidien Holding Inc.*, No. SACV 12–02161, 2014 WL 2472316  (C.D. Cal. May 30, 2014) ................................................................................. 19, 23

*Marek v. Chesny,* 473 U.S. 1 (1985).................................................................... 12

*Martens v. Smith Barney*, 181 F.R.D. 243 (S.D.N.Y. 1998) ................................ 19

*Morales v. Steveco, Inc.*, No. 1:09-cv-704, 2011 WL 5511767 (E.D. Cal. Nov. 10, 2011). ........................................................................................................ 15, 18

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................................... 14, 17, 28

*Odrick v. UnionBanCal Corp.*, No. C 10–5565, 2012 WL 6019495 (N.D. Cal. Dec. 3, 2012)............................................................................................... 13

*Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615 (9th Cir. 1982) ................................................................................................................... passim

*Pan v. Qualcomm, Inc.*, No.: 16-cv-01885, 2017 WL 3252212 (S.D. Cal. July 31, 2017) .......................................................................................................... 15, 28

*Parker v. Anderson*, 667 F.2d 1204 (5th Cir. 1982) ........................................... 19

*Rivas v. BG Retail LLC*, No. 16-cv-06458, 2020 WL 264401 (N.D. Cal. Jan. 16, 2020) ................................................................................................... 24

*Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, No. 19-cv-06088, 2020 WL 5074392 (N.D. Cal. Aug. 27, 2020) ................................................... 23

*See Rodriguez v. El Toro Limited P'ship*, No. 8:16-cv-59-JLS-KES, Dkt. 98 (C.D. Cal. June 26, 2018) .......................................................... 28

*Singh v. Roadrunner Intermodal Servs., LLC*, No. 1:15-cv-01497, 2019 WL 316814  (E.D. Cal. Jan. 24, 2019) ....................................................... 24

*Slaughter v. Wells Fargo Advisors, LLC*, No. 13-cv-06368, 2017 WL 3128802 (N.D. Ill. May 4, 2017) ...................................................... 22

*Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540, 2015 WL 3776765 (N.D. Cal. June 17, 2015) ................................................. 23

*Thomas v. Cognizant Tech. Solutions U.S. Corp.*, No. Sacv 11-1123, 2013 WL 12371622 (C.D. Cal. June 24, 2013) ................................... 24

*Velez v. Novartis Pharms. Corp.*, No. 04 Civ. 9414, 2010 WL 4877852, at (S.D.N.Y. Nov. 30, 2010) ............................................................ 26

*Wade v. Kroger Co.*, No. 3:01CV-699-R, 2008 WL 4999171 (W.D. Ky. Nov. 20, 2008). ............................................................................... 15

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), .......................................... 18

*Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96 (2d Cir. 2005) .................. 12

*Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273 (D. Colo. 1997)..... 19, 25, 27

*Williams v. Costco Wholesale Corp.*, No. 02-cv-2003, 2010 WL 2721452 (S.D. Cal. July 7, 2010) .......................................................... 17

*Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ........................................................................... 29, 30

*Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y. 2008) ....................................... 26

*Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230, 2014 WL 7011819 (N.D. Ill. Dec. 12, 2014) ............................................................................ 15

**Statutes  and Rules**

29 U.S.C. § 206(d) ................................................................................... 11, 29

29 U.S.C. § 216(b) .......................................................................................... 29

Fed. R. Civ. 23(e)(2) ...................................................................................... 14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Other Authorities**

4 Newberg on Class Actions § 13:14 (5th ed. 2019) ............................................ 14

PLAINTIFF'S MOTION FOR FINAL APPROVAL
Case No. 3:16-cv-01885-JLS-DHB

## I.    INTRODUCTION

On behalf of herself and the conditionally certified Class of current and former female employees, Plaintiff Class Representative Yunghui Chen moves for final certification of the Class and final approval of the Parties' Amended Collective and Class Action Settlement, as modified by the Addendum (the "Settlement"). This $7.75 million, non-reversionary Settlement provides meaningful financial redress to each Class Member and commits Defendants to sweeping programmatic relief that will benefit women at Western Digital for years to come.

The Class has signaled near-unanimous support for the Settlement. Each of the 1,863 Class Members received a detailed, Court-approved notice apprising them of the terms of the Settlement and their options to participate, opt out, or object. In response, only five (5) have requested exclusion and none has objected. This signals that the Settlement is fair, reasonable, and adequate in the opinion of the Class.

Each of the factors courts consider in evaluating a Class settlement weighs in favor of approval. This Settlement is the product of well-informed, arm's length negotiations between experienced counsel and provides relief for the Class that is fair, reasonable, and adequate in light of the risk, burdens, and delays of litigation. In accordance with "the strong judicial policy" favoring class action settlements, *Linney v. Alaska Cellular P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), the Court should approve the Settlement and dismiss the action.

## II.    FACTUAL BACKGROUND

### A.    Summary of the Claims

Plaintiff Yunghui Chen was employed at Western Digital for more than ten years. She alleges that Western Digital systemically failed to pay women equally to men and discriminated against women in pay, promotions, and placement, in violation of federal and state anti-discrimination laws. These allegations are based on common systems of compensation and promotion that result in unjustified, widespread, and uniform disparities in compensation, promotion, and placement.

PLAINTIFF'S MOTION FOR FINAL APPROVAL
Case No. 3:16-cv-01885-JLS-DHB

Western Digital has consistently denied any wrongdoing and has denied all of Plaintiff's individual and class allegations; it maintains that Plaintiff's individual claims lack factual and legal merit. Western Digital further maintains that, absent a settlement, Plaintiff would not be able to certify a class action under Rule 23 or a collective action on the Equal Pay Act (EPA) claims under 29 U.S.C. § 216(b).

### B.   Preliminary Approval

The Parties reached their original Collective and Class Action Settlement after extensive informal discovery, expert analysis of class-wide data, protracted negotiations, and a mediation session with renowned mediator David Rotman, as fully described in Plaintiff's Amended Memorandum ISO Preliminary Approval. (*See also* Declaration of Danielle Fuschetti ISO Preliminary Approval of Class Settlement (Doc. 6-3) ¶¶ 12-15.) On May 14, 2019, Plaintiff filed the Complaint in this action along with a Motion for Preliminary Settlement Approval. In addition to her initial papers, Plaintiff also filed two rounds of targeted supplemental briefing before the preliminary approval hearing. (Docs. 38 & 43.) Through the rigorous preliminary approval process, the Court and the Parties thoroughly probed the Settlement and made improvements that will inure to the benefit of the Class.

The Court held a preliminary approval hearing on December 6, 2019. At the hearing, the Court stated that "the agreement overall appears to be very good for the class," and expressed that the "injunctive sort of relief, the prospective relief and the monitoring and all that is – it's really fantastic." (Tr. 22:5, 12:1-3) The Court accordingly issued an Order preliminarily approving the settlement on April 3, 2020. In the Order, the Court conditionally certified the Class and EPA Collective Action for settlement purposes, named Plaintiff Yunghui Chen Class Representative, named David Sanford and Felicia Medina Class Counsel, and approved the original Settlement and the Notice subject to certain revisions.

Following the Order, the Parties provided additional information requested by the Court. (*See* Docs. 63, 64, 66.) The Parties also agreed upon and filed an

PLAINTIFF'S MOTION FOR FINAL APPROVAL
Case No. 3:16-cv-01885-JLS-DHB

Amended Settlement Agreement (Doc. 67-1), which implemented several changes outlined in the Order and made other minor edits. Pursuant to the Order, the Settlement Agreement (1) created a separate opt-in mechanism for the EPA claims (Settlement § 4.3.4); (2) modified the Notice to inform class members of the circumstances under which they could have signed a prior release and why doing so would impact their awards; and (3) added a special notification adapted from DOL Form WH-58 to accompany EPA payments (Settlement, Ex. 1).

On May 12, 2020, the Court issued a Minute Order finding that the Parties had satisfied its conditions for preliminary approval and approved dissemination of the Class Notice. (Doc. 70.) The Parties submitted an Addendum addressing remaining issues. (Doc. 71.) On June 26, 2020, the Court approved the Addendum.

C.   The Notice Process and the Class' Response

On July 31, 2020, the Class Administrator mailed Class Notices to 1,863 Class Members. (Decl. of Chris Pikus ¶ 11.) The Notice advised Class Members of their anticipated shares of the common fund and informed them that they could submit a request for exclusion, objection, and/or dispute postmarked by September 29, 2020. (*Id.* Ex. A.) The Administrator performed address traces on Notices returned as undeliverable and promptly re-mailed the Notice to those Class Members for whom alternate addresses were identified. (*Id* ¶ 12.) As of the date of this filing, the Administrator has received no objections and only five (5) requests for exclusion—for an opt-out rate of approximately 0.27%. (*Id.* ¶ 15.)

## III.   **THE SETTLEMENT BEFORE THE COURT**

The non-reversionary Settlement Fund provides a significant payment to each Class and Collective Member, in addition to class-wide programmatic relief, tailored to the claims and designed to secure equal opportunity for women at Western Digital. The Settlement has the support of Plaintiff, Class Counsel, Western Digital, and the Class, which has not raised a single objection.

A.   $7,750,000 Settlement Fund

If approved, under the Settlement and Plaintiffs' Motion for an Award of Attorney's Fees and Costs, Western Digital will make a non-reversionary payment of $7,750,000 into a common Settlement fund, to be allocated as follows:

- • $75,000 to the California Labor and Workforce Development Agency;

- • $50,000 for the Class Administrator's fees and expenses;

- • $30,000 for the payment of the Service Award;

- • Up to 33 1/3% of the Settlement Fund in combined attorneys' fees and costs, including expenses incurred by Class Counsel in the prosecution of this action to date (such as expert witness fees), excess costs incurred by the claims administrator (estimated at over $47,000), and the costs of any future mediation related to the implementation of the programmatic relief.

The remainder of the Fund will become the net Awards Fund for distribution to Class and Collective Action Members. In the pending motion for an award of attorney's fees and costs, the service payment, and other disbursements, Plaintiff seeks less than the amounts set forth in the Settlement and disclosed in the Notice.

B.     Settlement Awards Fund and Class Member Payments

Any portion of the cash Settlement Fund not allocated to other uses will be included in the net Fund for distribution to the employee class based on a formula that accounts for each Member's rate of pay and length of employment, as well as whether the Member has previously signed a release of claims. Settlement § 4.3. If the Court grants the requested attorneys' fees, costs and expenses, and service award, the Fund will contain $5,011,667, providing for a maximum individual net recovery of $17,758.81, an average individual net recovery of approximately $2,693, and an average recovery of approximately $3,184 for Class Members who have not previously signed a severance releasing their claims. (Pikus Decl. ¶ 16.)

Class Members who do not opt out of this Settlement and do not indicate their intention not to participate in the EPA Monetary Relief, will receive two checks: an EPA check for 25 percent of the individual recovery, representing

PLAINTIFF'S MOTION FOR FINAL APPROVAL
Case No. 3:16-cv-01885-JLS-DHB

consideration for the release of EPA claims, and a Class Action Settlement check for the remaining 75 percent of the individual recovery, which will represent consideration for release of the other claims. Settlement § 4.3.4.

C.     Programmatic Relief

Under the Settlement, Western Digital will also undertake two years of sweeping programmatic measures to help eliminate gender disparities and foster equal employment opportunity going forward. This programmatic relief has an immeasurable monetary value, which is separate from the cash Settlement fund.

Under the programmatic terms of the Settlement, Defendants will undertake initiatives to (1) evaluate, promote, and compensate women equitably; (2) perform statistical analyses with regard to promotions and compensation; (3) design and execute leadership development initiatives for women; (4) bolster their policies regarding flexible work arrangements and maternity and parental leave; (5) maintain records relevant to this agreement; (6) reinforce their commitment to EEO compliance and enforcement; (7) enhance their processes for investigation of internal complaints, such as complaints of gender discrimination; and (8) develop concrete plans for recruiting and developing female employees. Settlement §§ 3.4–3.10. It is anticipated that these wide-ranging reforms will have a tangible impact on the daily experience and career trajectory of women working at Western Digital.

The Settlement also provides mechanisms for ensuring full implementation of the programmatic relief. Defendants will appoint an internal Compliance Monitor at a Director level or above who will be charged with overall responsibility for monitoring compliance with the terms of the Settlement and will be provided with support staff, funds, and other resources reasonably necessary to discharge those duties. *Id*. § 3.2. In addition, Defendants will provide Class Counsel with a compliance report, *id*. § 3.2.5, and will separately report certain results from the pay and promotion equity studies. *Id*. §§ 3.7.4; 3.8.3. Finally, the Settlement provides for a streamlined dispute resolution and enforcement process. *Id*. § 3.3.3.

D.  <u>Release of Claims</u>

The Settlement contains tailored releases of Class and EPA claims. Both releases expressly do not apply to any claims "based on or arising out of events occurring after the last day of the Opt-out Period." Settlement § 11.3.

Upon the Effective Date, Class Members who have not opted out of the Settlement will release "all Released Parties from all claims asserted in the Complaint under applicable state, local, and federal law that were brought in the Litigation or that are based on the same facts and circumstances as the claims brought in the litigation." *Id*. § 11.1. The released claims include: "(i) claims for gender-based unequal pay, and (ii) claims for disparate treatment and pattern and practice discrimination based on gender with respect to all forms of compensation (including but not limited to salary, bonus, and stock or equity awards), job code placement, and denial of promotion, and (iii) claims for disparate impact discrimination based on gender with respect to all forms of compensation (including but not limited to salary, bonus and stock or equity awards), job code placement, and denial of promotion." *Id.* The settlement goes on to describe the laws under which released claims arise. *Id.*

Collective Action Plaintiffs who negotiate their check for EPA consideration shall be deemed to have opted into the collective action and, as of the Effective Date, accepted a release of "all gender-based discrimination claims she has or may have involving alleged unequal, disparate, or unfair compensation under [EPA], 29 U.S.C. §206(d), that were brought in the Litigation or that are based on the same facts and circumstances as the claims brought in the Litigation." *Id*. § 11.2.

Class Members will not release other claims, such as wrongful termination, or claims based on or arising from events after the last day of the Notice period.

E.  <u>*Cy Pres* Recipients</u>

The funds from any uncashed checks will be distributed in equal shares to Legal Aid at Work and Community Legal Aid SoCal, two organizations that

13

PLAINTIFF'S MOTION FOR FINAL APPROVAL
Case No. 3:16-cv-01885-JLS-DHB

provide support to women in the workplace. Settlement § 7.5; Addendum § 5 (Doc. 71); Declaration of Susannah K. Howard Re: *Cy Pres* Recipient.

## IV.   ARGUMENT

### A.   Class Action Settlements Are Favored and Should Be Approved When Fundamentally Fair, Adequate, and Reasonable[1]

#### 1.   *There Is a Strong Policy in Favor of Settlements, Particularly in Employment Discrimination Class Actions*

It is well-established that there is a strong policy in favor of settlement; this policy is especially pronounced in complex class action litigation and even more so in the context of employment discrimination. *See, e.g.*, *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation, and even more so where the subject matter is employment discrimination."). Particularly in the context of employment discrimination claims, the United States Supreme Court has noted "a strong preference for encouraging voluntary settlement." *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n.14 (1981).[2] As that Court has further emphasized, settlements provide class members with compensation "without the burdens, stress, and time of litigation"; some class members may even recover more than they could have at trial. Moreover, settlements serve the interests of the court and the public by "helping to lessen docket congestion." *Marek v. Chesny*, 473 U.S. 1, 10 (1985).

Title VII class settlements "are afforded a presumption of validity because they may produce more favorable results for protected groups than would more sweeping judicial orders that could engender opposition and resistance, and because

---

[1] To facilitate settlement, the Court should grant final certification of the settlement Classes and the EPA Collective for the reasons set forth at preliminary approval.

[2] *See also Cotton v. Hinton*, 559 F.2d 1326, 1330-31 (5th Cir. 1977); *Berkley v. United States*, 59 Fed. Cl. 675, 680-81 (Fed. Cl. 2004); *see further, e.g.*, *Linney*, 151 F.3d at 1238 (reinforcing "the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned") (citation omitted); *Wal-Mart Stores, Inc. v. Visa USA, Inc*., 396 F.3d 96, 116-17 (2d Cir. 2005).

14

they also reduce the cost of litigation, promote judicial economy, and vindicate an important societal interest by promoting equal opportunity." *Block v. Revlon, Inc.*, No. 80 Civ. 1378, 1985 WL 56614, at *9 (S.D.N.Y. May 10, 1985).

### 2. The Court Need Only Determine Whether the Settlement Is "Fair as a Whole"

"The very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624 (citation omitted). Hence, the Court's role in evaluating and approving a class action settlement is limited in nature: "The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id*. at 625. "Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id*. (citation omitted).[3] A court should therefore approve a class settlement if it is "fundamentally fair, adequate and reasonable." *Id.* at 625. The Court's "role . . . is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or collusion between the negotiating parties, and that the settlement is fair as a whole." *Odrick v. UnionBanCal Corp.*, No. C 10–5565, 2012 WL 6019495, at *3 (N.D. Cal. Dec. 3, 2012). It is not within the Court's purview "to reach any ultimate conclusions regarding the merits of the dispute, nor to second guess the settlement terms." *Id.* (citing *Officers for Justice*); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("Neither the district court nor this court ha[s] the ability to delete, modify or substitute certain provisions.") (citation omitted).

To assess fairness, reasonableness, and adequacy, the Court examines:

---

[3] *See also Berkley*, 59 Fed. Cl. at 686 ("A just settlement amount is often no more than an arbitrary point between competing notions of reasonableness. Moreover, the approving court need not make a fairness determination with mathematical precision, because [t]he weighing of a claim against compensation cannot be . . . exact. Nor should it be, since an exact judicial determination of the values at issue would defeat the purpose of compromising the claim . . . .") (citations omitted).

PLAINTIFF'S MOTION FOR FINAL APPROVAL
Case No. 3:16-cv-01885-JLS-DHB

(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted); *see also* Fed. R. Civ. 23(e)(2).[4]

      B.     <u>The Settlement Should Be Afforded a Strong Presumption of Fairness</u>

"Settlements are afforded a presumption of fairness if (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 445 (E.D. Cal. 2013); *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525–29 (C.D. Cal. 2004) (explaining final approval factors). That presumption of fairness is reinforced when the Court has already given preliminary approval to a settlement. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) ("'[The] preliminary [approval] determination establishes an initial presumption of fairness.'") (quoting *In re Gen. Motors Corp.*, 55 F.3d 768, 784 (3d Cir. 1995)).This Settlement here fits the bill and should be presumed to be fair.

      1.    *The Parties' Arm's Length Negotiations, Significant Pre-Settlement Discovery, and Absence of a Reversionary Clause Support Approval*

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair," because these conditions "suggest . . . that the Parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *DIRECTV*, 221 F.R.D. at 527-28 (citations omitted). Here,

---

[4] The recent amendments to Rule 23(e) do not alter the Court's analysis, as explained in *Greer v. Dick's Sporting Goods, Inc.*, No. 2:15-CV-01063, 2020 WL 5535399, at *3 (E.D. Cal. Sept. 15, 2020); *see also* 4 Newberg on Class Actions § 13:14 (5th ed. 2019) (amendments "essentially codified [courts'] prior practice").

there can be no question that the Settlement was the result of hard-fought, arm's length negotiation. The Settlement was reached only after a thorough investigation and negotiation process that included extensive informal discovery and the analysis of data regarding the Classes and their potential damages. The Parties fully aired their respective positions in a lengthy mediation with an experienced and highly reputed third-party neutral. The assistance of an impartial mediator strongly suggests the absence of collusion. *See, e.g.*, *Morales v. Steveco, Inc.*, No. 1:09-cv-704, 2011 WL 5511767, at \*11 (E.D. Cal. Nov. 10, 2011).

In addition, the Settlement contains no reversionary clause, meaning that all funds will be distributed. This further indicates a lack of collusion, supporting final approval. *Betancourt v. Advantage Hum. Resourcing, Inc.*, No. 14-cv-01788, 2015 WL 12661922, at \*7 (N.D. Cal. Aug. 28, 2015). Simply put, "the risk of collusion among counsel is so small that it is effectively non-existent." *Wade v. Kroger Co.*, No. 3:01CV-699-R, 2008 WL 4999171, at \*3 (W.D. Ky. Nov. 20, 2008).

### 2.     *Counsel Are Skilled and Seasoned Employment Lawyers*

Class Counsel, Sanford Heisler Sharp, LLP (SHS), is a nationwide firm experienced in complex class action litigation, particularly in gender discrimination cases. Federal courts have repeatedly recognized Sanford Heisler Sharp for its zealous advocacy. *See e.g.*, *Pan v. Qualcomm, Inc.*, No.: 16-cv-01885, 2017 WL 3252212, at \*5, \*9 (S.D. Cal. July 31, 2017); *id.* at \*12 ("[SHS] has expended tremendous effort in resolving this case favorably, thoroughly, and expeditiously. . . . Further Counsel has been nationally recognized both by courts and various industry groups as being highly skilled and experienced in class action employment cases.").[5] Medina Orthwein LLP is a queer-owned, public interest law firm headed by Felicia Medina, an experienced class action litigator, who has served as class

---

[5] *See also Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230, 2014 WL 7011819, at \*5 (N.D. Ill. Dec. 12, 2014) (collecting cases on SHS's record in employment actions).

counsel on numerous employment class actions, including some of the most significant Title VII class actions. Declaration of Felicia Medina ISO Motion for Attorneys' Fees, Expenses, and Service Award (Doc 79-2) ¶¶ 2-5.

### 3. No Employees Have Objected to the Settlement

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (citation omitted); *see also Churchill Village*, 361 F.3d at 576-77. Here, 1,863 employees have received notice and an opportunity to opt-out or object to the Settlement. Yet, there have been only five opt-outs (0.27%) and no objections. This overwhelming response represents a resounding endorsement of the Settlement. *See, e.g., Chu v. Wells Fargo Invs. LLC*, No. C 05-4526, 2011 WL 672645, at *4 (N.D. Cal. Feb. 15, 2011) ("[I]t is strong testament to the fairness of the settlement that not a single objector has come forward and that only 16 out of 2,752 noticed class members opted out.").[6] In addition, several class members have expressed their support for the settlement to Counsel, with one submitting a declaration on the record. (Sanford Decl. ¶ 15.)

### C. The Settlement Is Fair, Reasonable, and Adequate

The history of this matter thus affords the Settlement a presumption of fairness. Moreover, the remaining factors enumerated in *Churchill Village* also demonstrate that the Settlement's terms are eminently fair and reasonable.

### 1. The Strength of the Case, and the Risk, Complexity, and Duration of Further Litigation

---

[6] *See also Franco v. Ruiz Food Prods., Inc.*, No. 1:10–cv–02354, 2012 WL 5941801, at *10 (E.D. Cal. Nov. 27, 2012) ("[t]he settlement is [] entitled to a presumption of fairness" where, *inter alia*, there were no objections filed); *Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-324, 2012 WL 5364575, at *5 (E.D. Cal. Oct. 31, 2012) (approving wage and hour settlement with average award of $1,626 where there were no objections, and less than 1% of the class elected to opt out).

Both the procedural and substantive issues of this case have been hotly contested. The Parties have engaged in extensive discovery, data analysis, and negotiations. Absent settlement, the costs of litigating would have increased significantly for both sides. Counsel would have had to litigate the propriety of both Rule 23 and second-stage EPA certification, dispositive motions, a trial, and potential appeals. This process would have necessitated continued and lengthy discovery including costly and time-intensive depositions of Class Members across the country. *See, e.g.*, *DIRECTV, Inc.*, 221 F.R.D. at 526 ("unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results").

Moreover, while Plaintiffs believe they have meritorious claims, Defendants deny liability, and it is entirely possible that the Court would find against Plaintiffs. The Settlement, which guarantees that Class Members receive substantial recoveries and robust programmatic relief, provides significant advantages over rolling the dice and proceeding to final adjudication on the merits—after which the Class might achieve nothing. *See, e.g.*, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10ML 02151, 2013 WL 3224585, at *14 (C.D. Cal. July 24, 2013) (approving class settlement over numerous objections because, "[s]imply put, Plaintiffs might eventually recover more with continued litigation, but they also might recover nothing").

In short, the Settlement provides a substantial and immediate benefit to the Classes, which is "preferable to lengthy and expensive litigation with uncertain results." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 832 (N.D. Cal. 2017).[7]

---

[7] *See also, e.g., Williams v. Costco Wholesale Corp.*, No. 02-cv-2003, 2010 WL 2721452, at *3 (S.D. Cal. July 7, 2010) ("Given these risks, the Court agrees that the actual recovery through settlement confers substantial benefits on the class that outweigh the potential recovery through full adjudication."); *Bond v. Ferguson Enters.*, No. 1:09-cv-01662, 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011) ("Even if Plaintiffs were to prevail, they would be required to expend considerable additional time and resources, potentially outweighing any additional recovery obtained through successful litigation.").

PLAINTIFF'S MOTION FOR FINAL APPROVAL
Case No. 3:16-cv-01885-JLS-DHB

### 2.   *The Risks of Maintaining Class Status Through Trial*

Western Digital has agreed to class and collective action certification for settlement purposes, but has made clear that absent this Settlement, it would have contested the propriety of class treatment both in response to a motion for certification and through any trial. Substantial disputes remain as to both merits issues and the certifiability of the Classes. Disputes pertaining to certification stem from the constant evolution of Rule 23 jurisprudence in light of the Supreme Court's ruling in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), as well as recent lower-court decisions interpreting it. While Plaintiff believes this matter would have ultimately proceeded through trial as a class action, she recognizes that this was a significant challenge and by no means guaranteed.

Thus, this factor clearly weighs in favor of settlement. *See, e.g.*, *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1042 (S.D. Cal. 2017) ("Where there is a risk of maintaining class action status throughout the trial, this factor favors approving the settlement."); *Chu*, 2011 WL 672645, at *4 (noting that "the outcome of plaintiffs' case was far from certain, particularly in light of several recent decertification orders and denials of certification in similar … class actions").[8]

### 3.   *The Benefits Provided by the Settlement*

When evaluating the sufficiency of a settlement, the Court must consider the settlement as a whole and not its individual components, such as the direct cash relief provided through the class monetary fund. As stated in *Officers for Justice*:

> It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.[9] This is particularly true in cases, such as this, where monetary

---

[8] *See further Morales*, 2011 WL 5511767, at *10 ("Plaintiffs acknowledge that even if they demonstrate wage and hour violations … there would be substantial risk the Class would not be certified by the Court.") (quotation omitted).

[9] *See also, e.g.*, *Linney*, 151 F.3d at 1242 ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean

---

PLAINTIFF'S MOTION FOR FINAL APPROVAL
Case No. 3:16-cv-01885-JLS-DHB

relief is but one form of the relief requested by the plaintiffs. It is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.

688 F.2d at 628.[10] Further, "the provisions of a class action settlement must be viewed in terms of a range of probabilities, not mere possibilities." *Id*. at 630.[11] The Court's essential function is to assess "whether the settlement falls below the lowest point in the range of reasonableness." *Long v. HBSC USA, Inc*., No. 14 Civ. 6233, 2015 WL 5444651, at *5 (S.D.N.Y. Sept 11, 2015) (citation omitted).

Here, the Settlement provides for comprehensive programmatic relief crafted to address the alleged violations and to ensure that women are treated fairly and equitably going forward. The Court has previously commended the programmatic relief provisions as "really fantastic" and "very helpful to the class" (Tr. of 12/6/19

that the proposed settlement is grossly inadequate and should be disapproved.") (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n.2 (2d Cir. 1974)); *Grinnell*, 495 F.2d at 455n.2 ("There is no reason, at least in theory why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery."); *see further Bryan v. PPG*, 494 F.2d 799, 802 (3d Cir. 1974) ("[W]e believe there is a strong likelihood that [defendants] would not have been held liable to plaintiffs for back pay. We, therefore, reject appellants' contention that, given the likely trial result, the district court abused its discretion in approving the settlement for a low proportion of plaintiffs' asserted loss.").

[10] *See also, e.g.*, *Martens v. Smith Barney*, 181 F.R.D. 243, 265 (S.D.N.Y. 1998) (noting that "[c]ourts approve even settlements that fully waive damages claims where, as here, the settlements implement structural reforms to remedy the widespread civil rights violations plaintiffs allege," and that settlements are even more favorable and suitable for approval when they allow or provide for monetary relief in addition to injunctive measures); *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 292 (D. Colo. 1997) ("the reasonableness of the monetary settlement is supported by the additional non-monetary provisions of the settlement"); *Holden v. Burlington N. Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987).

[11] *See also, e.g.*, *Ma v. Covidien Holding Inc*., No. SACV 12–02161, 2014 WL 2472316, at *3 (C.D. Cal. May 30, 2014) (comparing wage and hour settlement to "what the plaintiffs were likely going to recover"; determining that 9-18% recovery supported approval); *Parker v. Anderson*, 667 F.2d 1204, 1209-10 & n.6 (5th Cir. 1982) (approving employment discrimination settlement based on "realistic range" of recovery, and indicating that even if there were a "comfortable probability" of a $5 million recovery, a $1.44 million settlement would still be reasonable).

Prelim. Approval Hearing, at 12:1-6), and all indications are that the Class heartily concurs. Class Members will receive substantial benefits from this relief, which will materially advance the goal of equal opportunity for female Western Digital employees. The programmatic provisions carry a considerable dollar value in terms of prospective raises and promotions that is difficult to calculate but sure to have reverberating effects for years to come. As in *Officers for Justice*, the vigorous slate of programmatic relief provided by the settlement strongly supports approval. *Id*. at 628 ("Without admitting any violations of law. . . defendants bound themselves to comply with a broad range of both restrictive and affirmative mandates covering every act, practice, policy, or custom addressed in plaintiffs' complaint. To this was added the grant of back pay, which is substantial, though potentially less than complete in some instances."); *see also, e.g.*, *Lane v. Brown*, 166 F. Supp.3d 1180, 1189-90 (D. Or. 2016) (injunctive relief obtained in disability discrimination case was "valuable and substantial," weighing "heavily" in favor of final settlement approval); *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, No. C 06-3903, 2008 WL 4667090, at \*5 (N.D. Cal. Oct. 22, 2008) (characterizing injunctive relief in employment discrimination case as "substantive, meaningful, and valuable to the class."); *id*. at \*8 (observing that the injunctive relief provided by the settlement "will mitigate any future harm stemming from discrimination during the class period").[12] "[I]n the area of equitable relief, which is the primary focus of Title VII actions, there was very little to be gained by the class in taking the case to trial, especially when balanced against the risks of litigating so complex a case." *Ellis v.*

---

[12] *See also Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 689 (N.D. Ga. 2001) (in employment discrimination case, granting final settlement approval due in part to strength of programmatic relief); *Holloway v. Best Buy Co., Inc.*, No. C-05-5056, 2011 WL 13257999, at \*1 (N.D. Cal. Nov. 9, 2011) (concluding that employment discrimination settlement providing solely for injunctive relief "is rationally related to the strength of plaintiffs' and class members' claims given the risk, expense, complexity, and duration of further litigation"); *In re LifeLock, Inc.*, No. 08-1977, 2010 WL 11627648, at \*4 (D. Ariz. Aug. 25, 2010) ("Many courts have approved settlements where, as here, the consideration offered consists of injunctive relief.").

*Naval Air Rework Facility*, 87 F.R.D. 15, 18-19 (N.D. Cal. 1980).

In addition, the monetary component of the Settlement, which will result in over $5 million in direct cash payments, will provide the Class Members with substantial awards under the circumstances. *See, e.g., Officers for Justice*, 688 F.2d at 624-30 (rejecting objector's contentions that back pay portion of settlement, a $400,000 fund providing for maximum award of up to $3,720, was "grossly inadequate" and that there was no provision for damages for emotional distress); *Block*, 1985 WL 56614 (approving employment discrimination settlement providing for injunctive relief and cash fund of $300,000, with awards ranging from $500 to $3,500). Here, the cash fund will be allocated to Class Members based on a formula that accounts for their tenures and rates of pay. It is estimated that individuals who have not previously released their claims will receive an average net recovery of over $3,184.34 and that awards will range up to over $17,500. Pikus Decl. ¶ 16.

Based on their expert's analysis, Counsel estimates that the *net* $5 million-plus Fund represents more than 20% of the Class' actual lost wages at the time of mediation, using aggressive but defensible assumptions. Sanford Decl. ¶ 10. Such a result constitutes a reasonable and adequate recovery, especially in the employment discrimination context. *See*, *e.g.*, *K.H. v. Sec'y of Dep't of Homeland Sec.*, No. 15-cv-02740, 2018 WL 6606248, at *4 (N.D. Cal. Dec. 17, 2018) (in light of "significant issues in proving liability," approving ADEA settlement providing $1,500 to each class member who separated from defendant-employer, while acknowledging that four plaintiffs could have potentially recovered up to $80-100,000 each; thus, the settlement represented about 1.5-2% of the potential recovery for those plaintiffs); *Boyd v. Bechtel, Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) (approving settlement of $120,000 out of $750,000 maximum liability (or 16%) in Title VII and Section 1981 race discrimination case, without any non-monetary relief component, where plaintiffs estimated that no more 18% of class

members would likely succeed in the damages phase of a trial).[13]

Notably, in many discrimination and other employment cases, courts approve settlements without providing an estimate of the recoverable damages or percentage recovery. *See, e.g.*, *Slaughter v. Wells Fargo Advisors, LLC*, No. 13-cv-06368, 2017 WL 3128802, at *2 (N.D. Ill. May 4, 2017) (granting final approval of employment discrimination settlement providing for both injunctive and monetary relief); *Cook v. Howard Indus., Inc.*, No. 2:11CV41, 2013 WL 943664, at *2-3 (S.D. Miss. Mar. 11, 2013) (approving employment discrimination settlement as "fair, reasonable, and adequate" based in part on raw valuation of cash fund and job benefits provided to class); *Officers for Justice*, 688 F.2d at 627-29.[14]

---

[13] *See also del Toro Lopez v. Uber Techs., Inc.*, No. 17-cv-06255, 2018 WL 5982506, at *2-3 (N.D. Cal. Nov. 14, 2018) (approving employment discrimination settlement involving both injunctive and monetary relief; determining that expected payments to class members "are fair and reasonable"). In briefing in that case, plaintiff's counsel represented that the $10 million gross fund was "a reasonable value in light of total potential damages, calculated by Plaintiffs to be $46.9 million, excluding liquidated damages and compensatory and punitive damages for potential sexual harassment and hostile work environment claims," *del Toro Lopez v. Uber Techs., Inc.*, No. 17-cv-06255, 2018 WL 1773330 (N.D.Cal. March 26, 2018), claims which—unlike here—were apparently covered by the class release. The gross fund thus represented approximately 21% of lost wages on compensation-related claims; the net fund of no more than $7,267,042 (after deduction of awarded attorney's fees and costs and service payments) amounted to 15.5% of this estimate. The settlement there also provided for 147,500 in additional payouts to the LWDA and settlement administrator, which would take the percentage down further.

[14] *See further, e.g., Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (in wage and hour case, approving settlement assuring immediate payment of a "significant amount of compensation for class members" as not "grossly inadequate" even though only "a fraction of the best possible recovery"; individual awards were likely to average $1,100) *Flores v. ADT LLC*, No. 1:16-cv-0029, 2018 WL 1062854, at *10 (E.D Cal. Feb. 27, 2018) (in wage-and-hour case, deferring to "the Parties' agreement that the [settlement] amount provides adequate compensation for class members"); *Chiaramonte v. Pitney Bowes, Inc.*, No. 06 CV 1507, 2008 WL 510765, at *6 (S.D. Cal. Feb. 25, 2008) (approving wage-and-hour settlement where parties provided no concrete estimate of potential recovery; noting that settlement funds that are "only a fraction of the potential recovery" have been approved, and citing case approving 6% recovery).

Settlements in other types of employment actions also provide ample support. *See, e.g.*, *Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, No. 19-cv-06088, 2020 WL 5074392, at *6 (N.D. Cal. Aug. 27, 2020) (approving gross wage-and-hour settlement representing *"*approximately 7.07% of the maximum potential recovery" as providing "good value": "Courts in this district have approved settlements at comparable rates compared to the maximum recoverable at trial."); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (approving net wage-and-hour settlement representing "about 7.3% of Plaintiff's estimated trial award": "[T]he Court finds that [these] figures are 'within the range of reasonableness' in light of the risks and costs of litigation."); *Ma*, 2014 WL 2472316, at *3 (wage-and-hour case: "[T]he settlement constitutes 9.1% of the total potential value of the action, if the class attained a full, favorable trial verdict on all causes of action; and 18.5% of the likely potential value of the action, if the class attained a favorable trial verdict on its strong causes of action. The average payment per claimant is $2,528.44. . . .[I]t is not uncommon for a class action settlement to amount to approximately 10% of the total potential value.") (citations omitted); *In re High-Tech Employees Antitrust Litig.*, No. 11-CV-02509, 2015 WL 5159441, at *4 (N.D. Cal. Sept. 2, 2015) (in employment case involving alleged wage suppression, approving total settlements that "exceed[ed] 14 percent of Plaintiffs' proposed single damages estimate. . . .District courts in the Ninth Circuit routinely approve settlements with much larger differences between the settlement amount and estimated damages.") (collecting cases).

Numerous other employment cases indicate that a recovery approximating 20% or less of wage damages warrants approval. *See Ferrell v. Buckingham Property Mgmt.*, No. 1:19-cv-00332, 2020 WL 291042, at *19 n.20 (E.D. Cal. Jan. 21, 2020) (collecting wage-and-hour and other cases with single-digit percentage recoveries); *DeLeon v. Ricoh USA, Inc.*, No. 18-cv-03725, 2020 WL 1531331, at *9 (N.D. Cal. Mar. 31, 2020) (concluding that settlement representing a 10.85%

recovery, with net benefits amounting to about 7% of estimated wage damages, was "fair in relation to the risks of continued litigation"); *Rivas v. BG Retail LLC*, No. 16-cv-06458, 2020 WL 264401, at \*5-6 (N.D. Cal. Jan. 16, 2020) (approving wage-and-hour settlement "of approximately 6.12% of Defendants' maximum potential exposure for class claims (with 2.4% net recovery to the class)"); *Singh v. Roadrunner Intermodal Servs., LLC*, No. 1:15-cv-01497, 2019 WL 316814, at \*5 (E.D. Cal. Jan. 24, 2019) ($5,868,517.01 net settlement out of $77,248,533 maximum damages calculation (or 7.6%), "exclusive of penalties, interest, and the value of the PAGA claim"); *Betancourt*, 2016 WL 344532, at \*5 (wage-and-hour settlement amounting to "9.7% of the total maximum potential recovery that class members would be entitled to if they prevailed on all claims"); *Altamirano v. Shaw Indus., Inc.*, No. 13-cv-00939, 2016 WL 1271046, at \*4 (N.D. Cal. Mar. 31, 2016) (gross settlement representing "approximately 14.3% of the unpaid wages at issue, excluding penalties," resulting in net recovery of 9.5% of "unpaid wages potentially recoverable at trial"); *Cruz v. Sky Chefs, Inc.*, No. C–12–02705, 2014 WL 7247065, at \*5 (N.D. Cal. Dec. 19, 2014) (gross settlement representing 8.6% of maximum recovery); *Thomas v. Cognizant Tech. Solutions U.S. Corp.*, No. Sacv 11-1123, 2013 WL 12371622, at \*6 (C.D. Cal. June 24, 2013) (finding settlement to be "fair and reasonable. The amount class members will receive is between 4.4 and 5% of the maximum liability figure plus the predicted penalties ($43,411,639.94 when discounted for class certification risks), in the range of 3.7% to 12.8% of all potential recoveries (assuming a range of 16 million to 50 million…)").[15]

---

[15] *See further, e.g., Acosta v. Evergreen Moneysource Mortg. Corp.*, No. 2:17-cv-00466, 2019 WL 6051117, at \*11 (E.D. Cal. Nov. 15, 2019) (in wage-and-hour case, approving settlement as fair when it amounted to 14.4-21.3% of maximum possible recovery, resulting in an a net recovery of 9.1-13.5% per employee); *Kurihara v. Best Buy Co.*, No. C-06-1884, 2009 WL 10692779, at \*8 (N.D. Cal. Oct. 14, 2009), *r&r adopted in relevant part* at 2010 WL 11575623 (N.D. Cal. Apr. 1, 2010) (approving gross settlement of $5 million, including attorney's fees and other disbursements, where objector submitted the declaration of a purported expert asserting that two of the multiple claims were alone valued at $93 million).

Wage and hour actions like these are especially useful reference points because they include similar measures of damages, including liquidated damages in many cases (which inflate maximum exposure estimates), but are frequently less challenging to certify and try than discrimination class actions. Moreover, wage-and-hour settlements typically do not involve significant programmatic relief.

Importantly, Defendants here not only vigorously contest liability but advanced a competing damages model showing substantially lower damages. Particularly together with the Settlement's programmatic relief, "[t]his is precisely the stuff from which negotiated settlements are made." *Officers for Justice*, 688 F.2d at 628; *see also, e.g., Berkley*, 59 Fed. Cl. at 686 ("In this case, the $30,000.00 lump sum payment amount falls between the plaintiffs' and defendant's 'competing notions of reasonableness.'") (citation omitted).[16]

Given the high degree of risk and uncertainty in further litigation, the recovery provided by the Settlement is significant. Class Members are guaranteed a recovery without taking any further action, unlike in a litigated case under the *Teamsters* model. *Cf. Booth v. Strategic Realty Tr. Inc.*, No. 13-cv-04921, 2015 WL 3957746, at *10 (N.D. Cal. June 28, 2015) (preliminarily approving class settlement and emphasizing that "[t]his is not a claims-made settlement and class members are not required to take any action to share in class funds"). Unless the Settlement is approved, it is likely that the ensuing litigation would carry on for years. *See, e.g., Officers for Justice*, 688 F.2d at 629 ("The track record for large class action employment discrimination cases demonstrates that many years may be consumed by trial(s) and appeal(s) before the dust finally settles."). In the meantime, "many of the immediate and tangible benefits accruing from the settlement would be lost."

---

[16] *See also In re High-Tech Employees Antitrust Litig.*, 2015 WL 5159441, at *4 (noting that defendants were "prepared to vigorously contest" plaintiffs' damages calculation); *Wilkerson*, 171 F.R.D. at 286 ("It is clear that a fact finder, when confronted with diverging opinions from experts of this caliber, could adopt the approaches used by one expert, or the other; could reject both; or could arrive at a middle ground between the two . . . coming to an independent conclusion.").

1  *Id.* A multi-year delay in effectuating the Settlement's programmatic and monetary

2  relief would benefit no one and only harm the Class.

3        In light of the extensive discovery and protracted negotiation process leading

4  to the Settlement, Fuschetti Decl. ISO Prelim. Approval (Doc. 6-3) ¶¶ 12-15, "there

5  is little reason to believe that further settlement negotiations would result in any

6  additional settlement funds." *Wright v. Stern*, 553 F. Supp. 2d 337, 347 (S.D.N.Y.

7  2008). Moreover, "[t]here is simply no assurance that more years of litigation would

8  result in any greater recovery." *Velez v. Novartis Pharms. Corp.*, No. 04 Civ. 9414,

9  2010 WL 4877852, at *15 (S.D.N.Y. Nov. 30, 2010) (quotation omitted); *see also*

10  *Officers for Justice*, 688 F.2d at 629 ("There is simply no indication . . . that any

11  judgment reached after a full trial would be sufficiently large, when discounted, to

12  reward the class members for their patience."); *Chu*, 2011 WL 672645, at *4

13  (granting final approval where awards would be substantial and litigation risk was

14  significant); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545,

15  559-60 (N.D. Ga. 2007) (although a small fraction of the potential recovery at trial,

16  "the settlement offers plaintiffs the opportunity to obtain an immediate, certain

17  recovery . . . .Plaintiffs do not have any guarantee that they will receive a larger

18  recovery from the Settling Defendants were they to forgo the settlement offer.").

19        As in *Carlson v. C.H. Robinson Worldwide, Inc.*, No. CIV 02-3780, 2006

20  WL 2671105, at *6 (D. Minn. Sept. 18, 2006), another gender discrimination action:

21  > The settlement provides substantial monetary and programmatic relief to
22  > the classes which justify the settlement in view of the substantial risks that
23  > the classes would not have prevailed at the class liability trial, would not
24  > have been further certified for purposes of monetary relief, or the damages
25  > recovered would have been substantially less than those sought. . . . Even
26  > if the classes prevailed at the class liability trial, class members likely
27  > would not obtain any individual monetary relief without several more
28  > years of litigation, including a likely appeal involving novel issues of law
     > and numerous *Teamsters* mini-trials. Litigation expenses would continue
     > to increase as a result of continued litigation.

28  Accordingly: "it is prudent to accept a settlement that provides [claimants] both a

1    substantial monetary recovery and significant employment benefits now."

2    *Wilkerson*, 171 F.R.D. at 290.

3              4.    *The Extent of Discovery and Stage of the Proceedings*

4              This factor considers whether the Parties have "sufficient information to

5    make an informed decision about the [s]ettlement." *In re Mego Fin. Corp. Sec.*

6    *Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Here, there can be no question that this

7    factor weighs strongly in favor of approval. As discussed above, the Parties were

8    only able to reach this agreement after highly experienced counsel conducted

9    extensive informal discovery and sharing of information, including the exchange of

10   documents and expert analysis of voluminous data. Fuschetti Decl. ISO Prelim.

11   Approval (Doc. 6-3) ¶¶ 12-13. The degree to which the Parties understood their

12   positions is further emphasized by the fact that they engaged in numerous rounds

13   of negotiation, including a mediation, overseen by an experienced mediator, that

14   extended well into the night. (*Id.* ¶ 14.) *See, e.g.*, *Chu*, 2011 WL 672645, at *4

15   (noting that "the respective factual and legal strengths of the Parties' arguments are

16   likely to have been sufficiently fleshed out" in the settlement process).

17             There is thus no reason to believe that this Settlement is premature or that

18   further information would help the Parties reach a fairer or more favorable result.

19             5.    *The Experience and Views of Counsel*

20             As discussed above, counsel for both sides are experienced in employment

21   class actions. They endorse the Settlement as fair, reasonable, and adequate.

22             6.    *The Reaction of the Class Members to the Proposed Settlement*

23             As detailed above, Class Members have had an extremely positive reaction

24   to the Settlement. The miniscule number of opt-outs (five) and lack of objections

25   indicate their resounding approval and preference to avoid further litigation. The

26   law is clear that the "absence of a large number of objections to a proposed class

27   action settlement raises a strong presumption that the terms of a proposed class

28   settlement action are favorable to the class members." *Giroux v. Essex Property Tr.,*

PLAINTIFF'S MOTION FOR FINAL APPROVAL
Case No. 3:16-cv-01885-JLS-DHB

*Inc.*, No. 16-cv-01722, 2019 WL 2106587, at *4 (N.D. Cal. May 14, 2019) (citation omitted); *see also DIRECTV*, 221 F.R.D. at 528-29 ("The complete absence of Class Member objections to the Proposed Settlement speaks volumes with respect to the overwhelming degree of support for the Proposed Settlement among the Class Members. That unanimous, positive reaction . . . is compelling evidence that the Proposed Settlement is fair, just, reasonable, and adequate."); *Pan*, 2017 WL 3252212, at *10 (approving settlement where only four class members objected and the results of the objection and opt-out process showed that "3,466 of 3,483 class members find the Settlement to be in their best interest").[17]

This Court has followed suit, even where parties have been unable to present it with class member declarations in support of a settlement. *See Rodriguez v. El Toro Limited P'ship*, No. 8:16-cv-59-JLS-KES, Dkt. 98, at *7-8 (C.D. Cal. June 26, 2018) (Staton, J.) (collecting cases and finding that the lack of objections and relatively small number of opt-outs supported approval). Here, Plaintiff has in fact submitted a Class Member declaration in favor of the Settlement. Moreover, numerous other Class Members have expressed their support to Counsel but are reluctant to come forward with a public declaration. (Sanford Decl. ¶ 15.)

\* \* \*

In sum, there can be no question that this hard-won settlement is "fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026. The Settlement not only protects all Class Members, including absent parties, but affords them a significant recovery on the risky, complex claims pled in this case. The Court should approve the Settlement.

---

[17] *See also, e.g.*, *Lane*, 166 F. Supp. 3d at 1191 ("The absence of significant numbers of objectors weighs in favor of finding the settlement to be fair, reasonable and adequate"); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval."); *Barbosa*, 297 F.R.D. at 448 (no objections among class of 1,837 low-wage workers: "Where a settlement agreement enjoys overwhelming support from the class, this lends weight to a finding that the settlement agreement is fair, adequate, and reasonable.").

### D.   The Settlement Also Merits Approval Under the EPA

The Federal EPA is part of the FLSA, 29 U.S.C. § 206(d). Under 29 U.S.C. § 216(b), "similarly situated" employees may pursue claims for wages together in an opt-in collective action. An opt-in settlement under the FLSA/EPA does not involve the rights of absent Class Members and is not subject to Rule 23(e). *See, e.g.*, 29 U.S.C. §§ 216(b), 256. Nonetheless, courts review the settlement to ensure that it is a fair and reasonable compromise of a bona fide dispute. *See, e.g., Lee v. Timberland Co.*, No. C 07-2367, 2008 WL 2492295 (N.D. Cal. June 19, 2008).

"The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement." *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *5 (E.D.N.Y. Feb. 18, 2011); *see also Hensley v. Eppendorf N. Am., Inc.*, No. 14-CV-419, 2014 WL 2566144, at *2-3 (S.D. Cal. June 6, 2014); *Gamble v. Boyd Gaming Corp.*, Nos. 2:13-cv-01009, 2015 WL 4874276, at *4 n.2 (D. Nev. Aug. 13, 2015) ("[B]ased on the significant differences between certification under Rule 23 and the joinder process under § 216(b), district courts are not constrained by the mandates for proposed settlement of Rule 23 class actions.") (citation omitted). As set forth in such cases, an FLSA settlement need only reflect a reasonable compromise of a bona fide dispute between the Parties.

Here, because the Settlement meets the Rule 23(e) standard, *a fortiori* it also easily passes muster under the FLSA, as incorporated by the EPA. First, the Parties plainly have bona fide disputes over Plaintiff's EPA claims covering both liability and damages and, absent settlement, whether final certification of a collective action under the stage-two decertification standard is appropriate. *See, e.g., Altier v. Worley Catastrophe Response*, Civ. No. 11-241, 2012 WL 161824, at *14 (E.D. La. Jan. 18, 2012) *Lee*, 2008 WL 2492295, at *2. Second, under the circumstances, Plaintiff maintains that there is little question that the Settlement represents a fair and reasonable compromise of contested claims. *See, e.g., Campanelli v. Hershey*

---

31

*Co.*, No. C 08-1862, 2011 WL 3583597, at *1 (N.D. Cal. May 4, 2011) ("substantial" payments achieved through arm's length negotiations); *Willix*, 2011 WL 754862, at *5. Moreover, unlike many cases, since each EPA collective action member is also a Rule 23 Class Member, by the time the settlement is approved, each employee will have received (i) a notice that meets the stringent requirements of Rule 23 and due process, and (ii) an opportunity to weigh in on the Settlement by appearing at the final fairness hearing.

## V.   **CONCLUSION**

The Court has thoroughly examined and combed over the Parties' Settlement and recommended certain revisions. After undergoing this extensive process, the Court preliminarily approved the Settlement as fair, reasonable, and adequate and coming within the range of possible final approval. In reaching this decision, the Court concluded that the Settlement's robust program of programmatic relief was "really fantastic" and would redound in very valuable benefits to the Class. (Tr. of Prelim. Approval Hearing, at 12:1-6.) Class Members would be unlikely to achieve such comprehensive provisions even after a successful trial on the merits. In consequence, the Court authorized Notice to the Class Members so that they could weigh in on the Settlement in connection with final approval.

Now, the Class Members have joined with the Court in speaking in a unified voice in favor of the Settlement. The Class's lack of objection and negligible opt-out rate are potent evidence that the Settlement is fair, reasonable, and adequate in all respects. It would serve the interest of the Class, the judicial system, and the public to proceed with implementation of the Settlement—ensuring that the women of Western Digital immediately receive the benefit of its comprehensive schedule of programmatic and monetary relief—rather than foment years of contested, burdensome, expensive, and risky litigation.

Accordingly, the Court should grant final approval of the Parties' Settlement.

PLAINTIFF'S MOTION FOR FINAL APPROVAL
Case No. 3:16-cv-01885-JLS-DHB

Dated: October 9, 2020                    Respectfully submitted,

                                          s/ David Sanford
                                          David Sanford (*Pro Hac Vice*)
                                          Russell Kornblith (SBN 289329)
                                          Danielle Fuschetti (SBN 294064)
                                          SANFORD HEISLER, LLP

                                          Felicia Medina (SBN 255804)

                                          *Attorneys for the Plaintiffs, Classes,
                                          and Collective*

PLAINTIFF'S MOTION FOR FINAL APPROVAL
Case No. 3:16-cv-01885-JLS-DHB