# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YUNG-HUI CHEN, on behalf of herself and all others similarly situated, <br> PLAINTIFFS, <br><br> vs. <br><br> WESTERN DIGITAL CORPORATION AND WESTERN DIGITAL TECHNOLOGIES, INC., <br> DEFENDANTS. | Case No.: 8:19-cv-00909-JLS-DFM <br><br> **ORDER (1) GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (DOC. 87) AND (2) GRANTING IN PART PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENT (DOC. 79)** |

Before the Court are two unopposed Motions filed by Plaintiff Yung-Hui Chen: one seeking final approval of the class action settlement and one seeking approval of the requested attorneys' fees, costs, and class representative service payment. (Final Approval Mot., Doc. 87; Final Approval Mem., Doc. 87-1; Fees Mot., Doc. 79; Fees Mem. 79-4.) Having reviewed the papers, held a fairness hearing, and taken the matter under submission, the Court GRANTS the Motion for Final Approval of Class Action Settlement and GRANTS IN PART the Motion for Award of Attorneys' Fees, Costs, and Service Payment.

## I. BACKGROUND

### A. Procedural History

On May 14, 2019, Plaintiff Yung-Hui Chen ("Chen") filed a Complaint and Motion for Preliminary Approval of Class Action Settlement in this Court. (Doc. 1.) Chen, a former Western Digital[1] employee, alleged that Western Digital systemically failed to pay women equally to men and discriminated against them in pay, promotions, and placement, in violation of federal and state anti-discrimination laws. The Complaint contains the following counts, which Chen brings in her individual and representative capacities: (1) gender discrimination under Title VII of the Civil Rights Act of 1964; (2) pay discrimination under the Fair Labor Standards Act, as amended by the Equal Pay Act; (3) gender discrimination under the California Fair Employment and Housing Act; (4) pay discrimination under the California Equal Pay Act, as amended by the California Fair Pay Act; (5) unfair competition under California's Unfair Competition Law; and (6) claims under PAGA. (Compl. ¶¶ 72–127.)

On November 14, 2016—more than two years before filing this suit—Chen filed a Private Attorneys General Act ("PAGA") Notice with the California Labor & Workforce Development Agency ("LWDA"). The parties subsequently engaged in informal informal

---

[1] Defendant Western Digital Technologies, Inc. ("Western Digital Technologies") is a wholly owned subsidiary of Defendant Western Digital Corporation, Inc. (Compl., Doc. 1 ¶ 5.) Where appropriate, the Court collectively refers to Defendants as "Western Digital."

2

discovery and entered negotiations over the terms of a potential class action settlement. (Compl. ¶ 10.) In April 2017, they reached a tentative agreement, but negotiations continued. Two years later, on May 14, 2019, the parties executed the final agreement—the Collective and Class Action Settlement Agreement ("Settlement Agreement"). (*See id.* ¶ 15.) Chen filed the Complaint and her Motion for Preliminary Approval that same day.

The Court ordered two rounds of supplemental briefing on the Motion for Preliminary Approval on the issues of (1) Western Digital's maximum potential liability, and (2) a confidential side agreement that resolved individual claims Chen had against Western Digital that had not been fully disclosed to the Court. (*See* First Order for Supp. Briefing. Doc. 27; Second Order for Supp. Briefing, Doc. 41.) Chen timely filed supplemental briefs on those issues. (First Supp. Br., Doc. 38; Second Supp. Br., Doc. 43.) The Court subsequently held a hearing on the Preliminary Approval Motion.

On April 3, 2020, the Court preliminarily approved the Settlement Agreement, conditionally certifying the Class and EPA Collective Action for settlement purposes, naming Chen as Class Representative, naming David Sanford and Felicia Medina as Class Counsel, conditionally approving the Settlement and the Notice, subject to certain revisions, and requesting additional information on some issues. (*See generally* Prelim. Approval Order, Doc. 61.) The parties subsequently provided the requested information. (Docs. 63, 64, 66, 67, 69.) Notably, the parties filed an Amended Settlement Agreement (Doc. 67-1), which implemented the changes the Court outlined in the Preliminary Approval Order.

On May 12, 2020, the Court issued an Order, finding that the Parties had satisfied its conditions for preliminary approval and approving dissemination of the Class Notice. (Doc. 70.) The Parties submitted an Addendum addressing remaining issues. (Doc. 71.) On June 26, 2020, the Court approved the Addendum.

### B. The Settlement Agreement

The Settlement Agreement sets forth two mutually exclusive subclasses, the California Sub-Class and the Nationwide Sub-Class, and a group of "Collective Action Plaintiffs" that overlaps with both sub-classes (collectively, the "Class" or "Class Members"). (*See* Amended Settlement Agreement, Doc. 67-1, §§ 1.3, 1.6, 1.17.) The California Sub-Class comprises "women directly employed by Western Digital Technologies, Inc., Western Digital (Fremont), LLC, and/or Western Digital Media, LLC[2] in California in a Covered Position at any time from November 1, 2012 through the date of [this Order.]" (*Id.* § 1.3.) A Covered Position is defined as "an indirect labor position at the Senior Manager level or below." (*Id.* § 1.8.) The Nationwide Sub-Class comprises "women directly employed by Western Digital Technologies, Inc., Western Digital (Fremont), LLC, and/or Western Digital Media, LLC in a Covered Position as regular employees in the United States at any time from November 1, 2013 through the date of [this Order.]" (*Id.* § 1.17.) The Nationwide Sub-Class excludes members of the California Sub-Class. (*Id.*) At the preliminary approval stage, Chen estimated that the Class included approximately 1,370 individuals, (*see* Mem. ISO Prelim. Approval, Doc. 19, at 4); however, as discussed below, that turned out to be an underestimate and the class comprises 1,863 individuals.

The Settlement Agreement provides that Western Digital shall pay a gross settlement amount of $7,750,000 into the Settlement Fund. (*See* Settlement Agreement §§ 1.26, 4.1.) The Settlement Fund is non-reversionary, meaning that no amount of it will revert to Western Digital after distribution. (*See* Amended Settlement Agreement § 1.26.) The Settlement Agreement further provides for (1) an award of attorneys' fees not to exceed $2,583,333 (33 ⅓% of the Settlement Fund); (2) reimbursement of Chen's litigation costs not to exceed $180,000; and (3) a service award to Chen in the amount of

---

[2] Western Digital Technologies, Inc., Western Digital (Fremont), LLC, and Western Digital Media, LLC are wholly owned U.S. subsidiaries of Western Digital Corporation. (Compl. ¶ 1.)

$50,000. (Amended Settlement Agreement §§ 4.2.3–4.2.5.) Additionally, $50,000 of the Settlement Fund is reserved for payment of the Class Administrator's fees and costs, and $75,000 of the Fund is earmarked for the LWDA payment required in PAGA settlements. (*See id.* §§ 4.2.1–4.2.2.)

After these distributions, the remaining "Settlement Awards Fund" (the "Settlement Fund")—an estimated $4,811,667—will be distributed to Class Members. (*Id.* § 4.2.6.) Each Class Member's award will be calculated based on a formula that accounts for the Member's "individual rate of pay and length of employment within the applicable Class Period, as well as whether she has previously signed a release of claims." (Settlement Agreement § 4.3.) On average, each Class Member will receive $3,615. (*See* Mem. ISO Prelim. Approval at 7.) The Settlement Agreement provides for distribution of residual monies to Community Legal Aid SoCal and Legal Aid at Work, organizations that provide legal aid and legal aid workshops emphasizing workers' rights, as a *cys pres* remedy. (Settlement § 7.5; Settlement Addendum Doc. 71, § 5.)

The Settlement Agreement requires that Class Members receive their shares of the Settlement Fund automatically by check within thirty days of the Court granting final approval of the Settlement, provided the Class Member does not opt out; no claim form or other submission is required to receive payment. (*See* Mem. ISO Prelim Approval at 23; Settlement Agreement § 7.1.) Class Members will have 180 days to cash their checks. If a Class Member does not timely cash a check, the parties wish the corresponding funds to be evenly distributed between the two *cy pres* recipient organizations. (*See* Settlement Agreement § 7.5.)

Finally, the Settlement includes programmatic relief provisions, under which Western Digital will undertake "sweeping programmatic measures to help eliminate gender disparities and foster equal employment opportunity going forward" (*see id.* at 8; Settlement Agreement § 3):

> [Western Digital] will undertake initiatives to (1) evaluate, promote, and compensate women equitably; (2) perform statistical analyses with regard to evaluation, promotion, and compensation; (3) design and execute

leadership development initiatives for women; (4) bolster their policies regarding flexible work arrangements and maternity and parental leave; (5) maintain records relevant to this agreement; (6) reinforce their commitment to EEO [(equal employment opportunity)] compliance and enforcement; and (7) enhance their processes for investigation of internal complaints, such as complaints of gender discrimination.

(Mem. at 8 (citing Settlement Agreement §§ 3.4–3.10).)

Pursuant to the Preliminary Approval Order, the Settlement Agreement (1) created a separate opt-in mechanism for the EPA claims (Settlement § 4.3.4); (2) modified the Notice to inform class members of the circumstances under which they could have signed a prior release and why doing so would impact their awards; and (3) added a special notification adapted from DOL Form WH-58 to accompany EPA payments (Settlement, Ex. 1).

### C. Notice and Class Response

On July 31, 2020, the Class Administrator mailed Class Notices to 1,863 Class Members. (Pikus Decl. ISO Final Approval, Doc. 87-3, ¶ 11.) The Notice advised Class Members of their anticipated shares of the common fund and informed them that they could submit a request for exclusion, objection, and/or dispute postmarked by September 29, 2020. (*Id.* Ex. A.) Some Notices were returned as undeliverable, and the Administrator conducted address traces and promptly re-mailed the Notice to those Class Members for whom alternate addresses were identified. (*Id* ¶ 12.) The Administrator certifies that he has received no objections and only six (6) requests for exclusion—amounting to an opt-out rate of approximately 0.32%. (*See* Doc. 88.)

On May 31, 2019, Western Digital served the Class Action Fairness Act ("CAFA") notice required by 28 U.S.C. § 1715 to the Attorneys General of the relevant states. (Doc. 63.)

## II. CONDITIONAL CERTIFICATION

In its Preliminary Approval Order, the Court conditionally certified the Class under Rules 23(b)(2) and 23(b)(3) for settlement purposes. (*See* Prelim. Approval Order, Doc. 61, at 6-19.) The Court also found adequate, and therefore appointed, David Sanford of Sanford Heisler Sharp LLP as Lead Class Counsel and Felicia Medina of Medina Orthwein LLP as Class Counsel. (*See id.* at 11-12.)

The Court initially had concerns with the revelation, in a footnote, that Chen had separately reached a confidential settlement of her individual, non-Class claims with Western Digital. But, as discussed in the Preliminary Approval Order, after reviewing two rounds of supplemental briefing on the issue, the Court concluded that Chen's non-class claims were distinct from those of absent class members, and there existed no indication that Chen has benefited at the expense of the Class. (*See id.* 9-11.)

Nothing since the Preliminary Approval Order counsels the Court to depart from its previous conclusions on the existence of a proper settlement class, its appointment of Sanford and Medina as Lead Class Counsel and Class Counsel respectively, or its appointment of Chen as Class Representative. The Court therefore incorporates its class certification analysis from the Preliminary Approval Order into the current Order. (Prelim. Approval Order at 6-19.)

## III. FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

### A. Legal Standard

Before approving a class-action settlement, Rule 23 of the Federal Rules of Civil Procedure requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). "To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a

governmental participant ; and (8) the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (numbering added) (citations and internal quotation marks omitted). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Servs. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton*, 327 F.3d at 960 (citations and internal quotation marks omitted).

In addition to these factors, where, as here, "a settlement agreement is negotiated *prior* to formal class certification," the Court must also satisfy itself that the settlement is not "the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (emphasis in original) (citation omitted). Accordingly, the Court must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947 (citation omitted). Such signs include (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]" *Id.* (internal citations and quotation marks omitted).

### B. Discussion

In the Preliminary Approval Order, the Court evaluated each of the *Staton* factors identified above to determine whether the Settlement Agreement is fair, reasonable, and adequate under Rule 23. (*See* Prelim. Approval Order, Doc. 61, at 20–27.) The Court determined that the following factors weighed in favor of approval: (1) the strength of

Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; and (6) the experience and views of counsel. (*Id.*) The Court was also satisfied that there were no signs of collusion between the parties. (*Id.* at 26–27.) The Court sees no reason to depart from its previous conclusion as to these factors. The Court therefore incorporates its analysis from the Preliminary Approval Order into the instant Order. (*Id.*)

However, at the time of preliminary approval, the Court ordered Chen to address two issues at the final approval stage.

*First*, Chen's Motion for Preliminary Approval did not provide evidence of Class Members' reactions to the proposed Settlement Agreement, which the Court therefore directed Plaintiff to submit ahead of the final fairness hearing. (*Id.* at 32.) In support of final approval, Chen submitted a declaration from a class member in support of final approval. (*See* Langley Decl., Doc. 87-4.) Class Counsel also declares that other class members came forward to express their satisfaction with the settlement, but they did not wish to file a public declaration. (Sanford Decl. ISO Final Approval, Doc. 87-2, ¶ 15.)

Moreover, the notice process has now concluded with no objections to the Settlement and only five opt-outs. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citations omitted). Given the lack of objections and the small number of requests for exclusion, this factor, too, then, weighs in favor of approval. *See Rodriguez v. El Toro Limited P'ship*, No. 8:16-cv-59-JLS-KES, Dkt. 98, at *7-8 (C.D. Cal. June 26, 2018) (Staton, J.)

*Second*, at the preliminary approval stage, Chen estimated the settlement value of $7,750,000 to be between 10.8% and 15.9% of Western Digital's maximum exposure and between 25.3% and 36.4% of total lost wages at the time of mediation. (*See* Prelim.

Approval Order, Doc. 61, at 23; First Supp. Brief, Doc. 38, at 3.) In preliminarily approving the settlement, the Court noted that Chen provided no case law from the employment discrimination context in support of the proposition that courts routinely approve settlements with this value, and the Court therefore ordered Chen to do so in support of final approval. (Final Approval Order at 23.)

Now, at the final approval stage, Chen cites authority for her position that the settlement value is reasonable given the nature of her claims. (Final Approval Mem. at 20-29 (collecting cases).) Although Chen still relies on settlements in wage-and-hour matters, she also cites to case law in the employment discrimination context, including decisions that approved settlements with monetary and programmatic components without examining the percentage of recovery, and a decision approving a settlement representing 16% of the total potential recovery in a race discrimination employment case where, unlike the present matter, the settlement included no non-monetary relief component. *See Slaughter v. Wells Fargo Advisors, LLC*, No. 13-CV-06368, 2017 WL 3128802, at *2 (N.D. Ill. May 4, 2017) (granting final approval without examining percentage of recovery where settlement involved both monetary and injunctive relief elements); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) (granting final approval where the settlement represented 16% of total exposure and involved no injunctive relief); *see also Parker v. Anderson*, 667 F.2d 1204, 1209-10 & n.6 (5th Cir. 1982) (approving employment discrimination settlement and indicating that even if there were a "comfortable probability" of a $5 million recovery, a $1.44 million settlement would still be reasonable).

The Court is therefore satisfied the percentage of recovery here is in the range of other settlements found to be reasonable in the employment discrimination context. Moreover, as the Court noted at the preliminary approval stage and Chen correctly argues in her final approval brief, the programmatic relief obtained here and the risks inherent to employment discrimination class actions weigh in favor of approving the settlement here. (*See* Prelim. Approval Order at 23; Final Approval Mem. at 21-23.)

## IV. LITIGATION AND ADMINISTRATION COSTS

Chen requests reimbursement of (1) $123,499 in litigation costs incurred by Class Counsel in prosecuting this action, and (2) $97,324 to the Settlement Administrator, Rust Consulting, for their fees and costs in administering the Settlement. (Fees Mem. at 23-25.)

*First*, Class Counsel in common fund cases are entitled to "reasonable out-of-pocket litigation expenses that would normally be charged to a fee-paying client." *Trustees of Const. Industry and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006) (citations omitted); *see also* 42 U.S.C. § 2000e-5(k); Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."). Class Counsel have documented the expenses incurred in court filing fees, depositions, travel, expert fees, and mediation fees. (*See* Sanford Decl. ¶ 22; Ex. G.) The Court finds the various expenses adequately documented and reasonable. Accordingly, Chen's request for $123,499 in costs is GRANTED.

*Second*, the Court approved Rust as the Settlement Administrator in this action and Rust now requests administration costs as provided for by the Settlement Agreement. (Prelim. Appr. Order at 19.) At the preliminary approval stage, Rust estimated the total costs would be $36,471.00. (Pikus Decl. ISO, Doc. 79-3, ¶ 19.) The Settlement Agreement caps administration costs at $50,000. (Amended Settlement Agreement, Doc. 67-1, § 4.2.2). However, Rust has submitted an accounting of its costs incurred, showing that its total cost of administration as of the date Chen filed the Final Approval Motion was $62,382.00 (*see* Ex. B to Pikus Decl. ISO Fees, Doc. 79-3) and it further estimates that the remaining cost of administration will be $34,942.00. *Id.* ¶ 19.) Thus, Rust's total cost will amount to $97,324.00. Rust explains that this final estimate is much higher than the original estimate because it has had to perform unanticipated administration tasks. (*Id.*) Specifically, Rust explains that (1) Western Digital provided it with data about class

members in an unanticipated file format that required additional work and manual processing by Rust's team; (2) Rust printed more class notices than anticipated because the class size increased from 1,370 to 1,863, and it anticipates having to follow-up on undeliverable notices; and (3) due to the class size increase, Rust anticipates processing, printing, mailing and tax reporting for approximately 495 additional settlement award checks than anticipated. (*Id.*)

Class Counsel inform the Court that they are willing to pay the administration costs in excess of the $50,000 provided in the Settlement Agreement out of pocket and therefore request that the Court award $50,000 in administration costs and factor in Class Counsel's out-of-pocket costs in calculating attorneys' fees. (Fees Mot. at 12.) The Court finds Class Counsel's request would inappropriately muddle the award of costs and attorneys' fees in this matter. Instead, the Court finds it appropriate to depart from the $50,000 cap set by the Settlement Agreement and to award Rust the actual costs of administration. As discussed, Rust has explained and justified the larger than anticipated costs it will incur in administering the settlement here. Accordingly, the Court GRANTS $97,324.00 in administration costs.

## V. **ATTORNEYS' FEES**

Rule 23 permits a court to award "reasonable attorneys' fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods.*, 654 F.3d at 941. In the Ninth Circuit, the benchmark for a fee award in common fund cases is 25% of the recovery obtained. *See id.* at 942 ("Where a settlement produces a common fund for the benefit of the entire class, . . . courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record for any 'special circumstances' justifying a departure."). Courts must "justify any increase or decrease from this amount based on circumstances in the

record." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). The Ninth Circuit has identified a number of factors the Court may consider in assessing whether an award is reasonable, including: (1) the results achieved, (2) the risk of litigation, (3) the skill required and quality of work, and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). Counsel's lodestar may also "provide a useful perspective on the reasonableness of a given percentage award." *Id.* at 1050.

Here, Class Counsel request $2,583,333—the maximum attorneys' fees amount recoverable under the Settlement Agreement. (Fees Mem., Doc. 79-4, at 8.) As discussed above, however, Class Counsel included, in their request for fees, legal costs and unexpected administration costs that the Court found more appropriate to address separately. The portion of the request attributable to fees alone is therefore $2,382,510 (30.7% of the Settlement Fund). (Fees Mem. at 8-9.)

For the reasons below, the Court finds that the requested upward departure from the benchmark rate is warranted here, and awards Class Counsel $2,382,510, which is equivalent to 30.7% of the Settlement Fund.

### A. Results Achieved

Class Counsel achieved a settlement that represents between 10.8% and 15.9% of Western Digital's maximum exposure and between 25.3% and 36.4% of total lost wages at the time of mediation. (*See* Prelim. Approval Order, Doc. 61, at 23.) As discussed above, this percentage of recovery is within the typical range of approved employment discrimination class action settlements.

While the recovery amount falls within the typical range, the programmatic terms of the Settlement are robust and expansive. Under the Settlement Agreement, Western Digital will undertake initiatives to (1) evaluate, promote, and compensate women equitably; (2) perform statistical analyses with regard to promotions and compensation; (3) design and execute leadership development initiatives for women; (4) bolster their policies regarding flexible work arrangements and maternity and parental leave; (5)

maintain records relevant to this agreement; (6) reinforce their commitment to EEO compliance and enforcement; (7) enhance their processes for investigation of internal complaints, such as complaints of gender discrimination; and (8) develop concrete plans for recruiting and developing female employees.  (Settlement §§ 3.4-3.10.)  As the Court noted at the preliminary approval stage, Chen would have been less likely to achieve such programmatic relief by taking the case to trial.  (Preliminary Approval Order at 23.)  The outstanding programmatic relief obtained here, combined with reasonable and fair monetary recovery, weighs in favor of an upward departure from the benchmark in awarding attorneys' fees.

### B. Risk of Litigation

Class Counsel argue convincingly that an employment discrimination class action is inherently risky.  Specifically, they argue that following the Supreme Court's heightening of the commonality standard in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), and *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), defendants are more likely to challenge certification and less likely to settle.  (Fees Mem. at 15-16 (citing *Pan v. Qualcomm Inc.*, No. 16-CV-01885-JLS-DHB, 2017 WL 3252212, at *12-13 (S.D. Cal. July 31, 2017) ("[T]he issues in this case are complex insofar as successfully proving legally cognizable employment discrimination can often be difficult . . . discrimination-based class actions are especially risky and usually require greater pre-suit discovery given the Supreme Court's recent heightening of the commonality standard.") (citation and quotations omitted)).)  Accordingly, this factor also weighs in favor of an upward departure from the 25% benchmark.

### C. Skill Required and Quality of Work

Class Counsel provided skillful, quality work, including conducting a mediation, negotiating a comprehensive settlement involving two overlapping sets of settlement classes, and providing two rounds of supplemental briefing at the Preliminary Approval stage.  Class Counsel have been recognized for their work prosecuting large class actions

and are fairly characterized as specialists.  (Fees Mem. at 17 (citing Medina Decl. ISO Fees, Doc. 79-2, ¶¶ 2-6; Sanford Decl., Doc. 79-1, ISO Fees ¶¶ 6-16; *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 CIV. 2207 JGK, 2010 WL 3119374, at *1 (S.D.N.Y. Aug. 6, 2010)).)  As noted previously, employment discrimination actions are particularly risky and involve challenging issues of proof.  The pre-suit settlement and the results achieved are the result of years of informal discovery and negotiations by Class Counsel.  Accordingly, this factor too weighs in favor of an upward departure from the benchmark amount.

### D. Contingent Nature of the Fee

Class Counsel invested approximately 2,017.23 hours in this case.  (Fees Mem. at 18; Ex. A to Medina Decl. ISO Fees, Doc. 79-2; Ex. H to Sanford Decl. ISO Fees, 79-1.)  During the past four years, Counsel have received no compensation for their efforts on behalf of class members.  (*Id.* at 18-19.)  "Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award and may justify awarding a premium over an attorney's normal hourly rates."  *Monterrubio*, 291 F.R.D. at 457 (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1299 (9th Cir. 1994)).  However, standing alone this factor does not justify an upward departure of the benchmark.  *See, e.g., Clayton v. Knight Transp.*, 1:11-cv-00735-SAB, 2013 WL 5877213, at *8 (E.D. Cal. Oct. 30, 2013) (acknowledging that the contingent nature of the fee "is an important factor," but declining to grant an upward departure where "the risks associated with this case are no greater than that [sic] associated with any other [similar action].").  Here, the settlement was reached before the action was filed, greatly reducing any contingent risk.  In addition, the Court's review of Class Counsel's billing records seems to indicate that Class Counsel have billed all their hours—beginning in 2017—at their current billing rate.  This higher billing rate effectively compensates Class Counsel for any delay in compensation.  Accordingly, this factor does not weigh in favor of an upward departure from the benchmark.

### E. Lodestar Cross-Check

"Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. Here, Class Counsel represent that attorneys and staff expended 2,017.23 hours on this matter, and provide detailed time keeping records in support. (Sanford Decl. ISO Fees, Doc. 79-1, ¶ 24; Ex. H.)

The lodestar cross-check first requires the Court to determine whether the hourly rates sought by counsel are reasonable. "[T]he district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). This determination "is not made by reference to rates actually charged [by] the prevailing party." *Id*. The fee applicant bears the burden of showing that "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (citation omitted). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Courts may also "rely on [their] own familiarity with the legal market." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). As a general rule, the forum district represents the relevant legal community. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

Class Counsel declare that their requested rates have been approved by other courts in this and other districts in California. (Fees Mem. at 20 (citing *Campbell v. Best Buy Stores, L.P.*, No. LA CV 12-07794 JAK (JEMX), 2016 WL 6662719 (C.D. Cal. Apr. 5, 2016) (approving similar rates in a wage-and-hour action); *Wellens v. Sankyo*, No. C

13-00581 WHO (DMR), 2016 WL 8115715, at *3 (N.D. Cal. Feb. 11, 2016)(approving Sanford Heisler Sharp LLP's rates)).)

The Court is familiar with the legal market and is therefore satisfied that the firms' rates are reasonable. Moreover, both Medina and Sanford are experienced with employment class actions, justifying the partner rates in this matter. (Fees Mem. at 17 (citing Medina Decl. ISO Fees, Doc. 79-2, ¶¶ 2-6; Sanford Decl., Doc. 79-1, ISO Fees ¶¶ 6-16).)

Next, the Court finds that the detailed billing records Class Counsel have attached to their declarations offer a satisfactory accounting of the attorney work hours on this case. (*See* Ex. A to Medina Decl., Ex. H. to Sanford Decl. Doc. 50-1.) Of special importance to the Court's assessment is the presence of both partners and an associate on the matter, which demonstrates a tendency toward efficient billing. Moreover, a review of the records shows that administrative tasks were appropriately delegated to legal support staff and billed at a lower rate.

Combined, Class Counsel's total lodestar is $1,029,592.35. Awarding Class Counsel $2,382,510 yields a lodestar multiplier of 2.3. The Court finds this multiplier, while on the high side, reasonable given the considerations discussed above. Accordingly, taking into account the *Vizcaino* factors and lodestar crosscheck, the Court GRANTS the request for attorneys' fees and awards Class Counsel $2,382,510, which amounts to 30.7% of the Settlement Amount.

### VI. CLASS REPRESENTATIVE SERVICE AWARD

The Settlement provides for a service award of $50,000 to Chen for bringing this action as Class Representative. (Amended Settlement Agreement, Doc. 67-1, § 6.1.) In the Preliminary Approval Order, the Court expressed concern about the amount of the service award, and, in her Motion for Final Approval, Chen seeks a reduced award of $30,000.

Service awards are "discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000)).

Here, Chen asserts that she has dedicated approximately 174 hours towards prosecution of this case since September 2016. (Fees Mem., Doc. 79-4, at 28.) Specifically, Chen states that she assisted in prosecution of this matter by "consulting with Class Counsel on a variety of issues" ; "reviewing and providing input" on a number of documents including the mediation statement and the programmatic relief proposal; and "attending the class mediation," among other things. (Fees Mem. at 28.) Chen states that she drew from her own experience at Western Digital, and her observations of how Western Digital treated other women to devise programmatic relief to address issues at the company. (*Id.*) Chen's contributions have undoubtedly helped bring about monetary relief for the entire class and programmatic changes at Western Digital. Accordingly, the Court finds that a service award is appropriate here.

However, Chen's requested incentive award of $30,000 is unreasonably high. Although this amount represents only 0.387% of the Settlement Fund, the Court does not find $30,000 to be a fair measure of Chen's effort and risk. Chen spent 174 hours on this matter over the past four years. While she attended a mediation, she did not sit for a deposition or undertake inordinate reputational or monetary risk. Specifically, Chen separately settled individual claims she had against Western Digital and any reputational or monetary risk she faced as a result of this action could just as easily be attributed to her individual claims.

For the foregoing reasons, and as explained at the final fairness hearing, the Court finds it appropriate to compensate Chen for her efforts by awarding $100 an hour for the 174 hours she has expended on this matter, amounting to $17,400. At the final approval

hearing, Class Counsel informed the Court that Chen has also assisted in preparing the Final Approval Motion and the hours she has expended in support are not reflected in the briefing. Accordingly, the Court adjusts the hourly total upward to account for time Chen invested in Final Approval and AWARDS Chen $18,000.

## VII. CONCLUSION

The Court finds the settlement to be fair, adequate, and reasonable. Accordingly, the Court GRANTS the Motion for Final Approval of Class Action Settlement.

The Court also GRANTS IN PART the Motion for Award of Attorneys' Fees, Costs, and Service Payment. The Court awards $97,324.00 in administration costs to Rust Consulting. The Court also awards Class Counsel $2,382,510 in attorneys' fees, which amounts to 30.7% of the Settlement Fund, and $123,499 in litigation costs. Finally, the Court also awards a service payment of $18,000.00 to Chen.

Distribution of settlement payments to Class Members shall be made in accordance with the method outlined in the Settlement Agreement.

Class Counsel is ORDERED to file a proposed final judgment within five (5) days of entry of this Order.

**It is so ORDERED.**

DATED: January 05, 2021

JOSEPHINE L. STATON
HON. JUDGE JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE